IT IS SO ORDERED.

**Ed HARTMAN, et al., Plaintiffs,**

v.

**UNITED BANK CARD, INC., et al., Defendants.**

**No. C11–1753JLR.**

United States District Court,
W.D. Washington,
at Seattle.

April 8, 2013.

Beth E. Terrell, Kimberlee L. Gunning, Terrell Marshall Daudt & Willie PLLC, Kim Williams, Roblin John Williamson, Williamson & Williams, Seattle, WA, for Plaintiffs.

Kenneth E. Payson, Matthew S. Sullivan, Davis Wright Tremaine, Patrick Gaynor Middleton, Paul S. Smith, III, Forsberg & Umlauf, Seattle, WA, for Defendants.

ORDER DENYING PLAINTIFFS' MO-
  TION FOR LEAVE TO FILE A
  SECOND MOTION FOR CLASS
  CERTIFICATION AND TO CON-
  DUCT ADDITIONAL CLASS DIS-
  COVERY

JAMES L. ROBART, District Judge.

## I. INTRODUCTION

Before the court is Plaintiffs' motion for leave to file a second motion for class certification and to engage in additional class-related discovery (Dkt. # 103). The court has considered the motion, all submissions filed in support and opposition thereto, the balance of the record, and the applicable law. Being fully advised, the court DENIES Plaintiffs' motion.

---

**1.** ConnecTel is a third-party vendor that contracted with Defendant International Payment

## II. BACKGROUND

This matter involves a putative class action alleging that Defendants played recorded messages on telephones in violation of Washington's statute restricting the use of automatic dialing and announcing devices ("WADAD"), RCW 80.36.400, along with other state statutory and common law claims. (*See generally* 2d Am. Compl. (Dkt. # 47).) Originally, Plaintiffs defined their putative class as:

> All Washington residents who received one or more commercial solicitations from UBC directly or through its agents, including but not limited to IPS, through the use of an automatic dialing and announcing device.

(Class Cert. Mot. (Dkt. # 36) at 1; 2d Am. Compl. ¶ 4.2.)

On October 4, 2012, the court entered an order denying Plaintiffs' motion for class certification. (10/4/12 Order (Dkt. # 81) at 20–34.) The court held that although Plaintiffs had established two of the requirements for a class action under Federal Rule of Civil Procedure 23(a)—namely, numerosity and adequacy—Plaintiffs had failed to demonstrate commonality or typicality. (10/4/12 Order at 22–29.) The court also found that class certification under either Rule 23(b)(2) or 23(b)(3) would be inappropriate because individualized hearings would be necessary with respect to (1) whether a particular call at issue was answered by a person or a machine (10/4/12 Order at 32, 33), (2) whether a recorded message was left (*id.* at 32, 33–34), (3) if a recorded message was left, which message was played (*id.* at 32, 34), and (4) whether the calls at issue were made to telephones physically located within Washington State (*id.* at 32–33, 34).

On the same day that the court signed the order denying class certification, Plaintiffs filed a motion to supplement the record on class certification. (Mot. to Supp. (Dkt. # 77).) Specifically, Plaintiffs sought to submit an excerpt of an Excel spreadsheet (produced by a non-party, ConnecTel, Inc. ("ConnecTel"))[1] that contained data concerning

Systems, Inc. ("IPS").

the telephone calls that Defendants are alleged to have made using automatic dialing and announcing devices. (Mot. to Supp. (Dkt. # 77); *see also* Williamson Decl. (Dkt. # 78) Exs. G, H.) Plaintiffs had indicated that this information—which formed the evidentiary basis of their putative class—had been provided to the court already as a part of their motion for class certification. (Reply to Class Cert. (Dkt. # 64) at 3–4.) However, for reasons that remain unclear to the court, prior to their motion to supplement the record Plaintiffs had failed to submit the ConnecTel spreadsheet or a representative sample of it. (*See* 10/9/12 Order (Dkt. # 82) at 3).[2] The court initially denied Plaintiffs' motion to supplement the record. (*See* 10/9/12 Order (Dkt. # 82).)

Plaintiffs then moved for reconsideration—both of the court's order denying class certification and the court's order denying supplementation of the record. (Mot. for Recon. (Dkt. # 83).) The court granted reconsideration of its order denying supplementation of the record, but denied reconsideration of its order denying class certification. (1/2/13 Order (Dkt. # 99).) The court found that there was sufficient evidence to support its conclusion that individual fact finding would be necessary to determine whether recipients of the calls were located within Washington State. (*Id.* at 8.) The court also found, based on the testimony of Jeff Peralta (one of the owners of ConnecTel), that ConnecTel's records were insufficient to identify whether a message played at all or which specific message played with respect to each identified call. (*Id.* at 10–11.)

In total, Mr. Peralta has contributed five declarations to this action. Plaintiffs initially filed a declaration from Mr. Peralta along with their motion for class certification. (1st Peralta Decl. (Dkt. # 38).) Defendant United Bank Card, Inc. ("UBC") then filed a second Peralta declaration along with its response to Plaintiffs' motion for class certification. (2d Peralta Decl. (Dkt. # 53).)

Plaintiffs filed a third Peralta declaration in conjunction with its motion to supplement the record. (3d Peralta Decl. (Dkt. # 80).) With their motion for reconsideration, Plaintiffs filed a fourth Peralta declaration. (4th Peralta Decl. (Dkt. # 85).) Finally, in response to Plaintiffs' motion for reconsideration, UBC filed the fifth and final Peralta declaration. (5th Peralta Decl. (Dkt. # 90).)

Plaintiffs now ask the court for leave to file a second motion for class certification. (Mot. (Dkt. # 103).) Plaintiffs propose a revised class definition as follows:

> All persons who received a telephone call made by UBS or on its behalf using an automatic dialing and announcing device, when such a call included a pre-recorded message lasting longer than 30 seconds, contained a commercial solicitation, and was transmitted to a telephone number with a Washington State area code.

(*Id.* at 6 (footnote omitted).) They also seek significant additional class discovery including (1) taking the deposition of Mr. Peralta, (2) seeking "production and/or inspection of ConnecTel's dialing equipment and related software, (3) designating and using an expert witness to analyze and produce a report concerning Mr. Peralta's testimony, ConnecTel's call records, the dialer(s) used, and the software used in conjunction with the dialer(s), (4) enforcing subpoenas previously issued to IPS's other third party vendors used to make the pre-recorded solicitation calls, and (5) "compel[ling] IPS to produce all records regarding telephone calls made by ConnecTel or any other vender it used and/or records of the telephone numbers uploaded to any such vendors' dialer sites." (Mot. at 9–10.)

## III. ANALYSIS

The court addresses Plaintiffs' request to reopen class discovery first, and then considers their motion for leave to file a second motion for class certification.

---

**2.** The entire Excel spreadsheet consists of 2,575,102 lines of data, and if it were to printed out, it would consist of 54,792 pages of data. (10/4/12 Byron Decl. (Dkt. # 79) ¶¶ 3, 6.) This may explain why the data was not submitted to the court in its entirety in hardcopy in support of Plaintiffs' motion for class certification. It does not, however, explain why the data was not submitted in electronic form or why a representative sample of the spreadsheet in hardcopy was not submitted. Indeed, once the court brought the omission to the attention of Plaintiffs' counsel, Plaintiffs' counsel produced hardcopy samples of the Excel spreadsheet along with their motion to supplement the record. (*See* 10/4/12 Williamson Decl. (Dkt. # 78) Exs. G, H.)

## A. Plaintiffs' Motion to Re–Open Class Discovery

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B). Here, the court issued an order directing Plaintiffs to complete class discovery no later than May 12, 2012. (*See* 3/23/12 Order (Dkt. # 34) at 11.) Plaintiffs, however, did not file their motion to take additional class-related discovery until February 21, 2013—more than nine months later. Thus, Plaintiffs must show excusable neglect for failing to conduct the necessary class discovery during the time allotted by the court. *See Ruleford v. Tulsa World Publishing Co.,* 266 Fed.Appx. 778, 786 (10th Cir.2008) (unpublished) (applying Rule 6(b) to a motion to extend a discovery deadline).

▮ Whether a litigant has established excusable neglect is entrusted to the district court's discretion. *Pincay v. Andrews,* 389 F.3d 853, 859 (9th Cir.2004). The court considers four factors: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Id.* at 855 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

▮ The court addresses the third factor first—the reason for the delay. Nowhere do Plaintiffs address the issue of why they could not have conducted the additional class discovery they presently seek during the time allotted by the court or why their failure to do so constitutes excusable neglect. They acknowledge that the court's March 23, 2012, order (Dkt. # 82) "required the parties to complete class certification discovery before Plaintiffs filed their motion for class certification." (Reply (Dkt. # 109) at 2.) Yet, at most, Plaintiffs assert that "[t]he need to depose Mr. Peralta was not clear until the end of briefing on Plaintiffs' motion for reconsideration, when comparison of the <u>five</u>

declarations Mr. Peralta submitted made clear that a deposition was necessary to properly evaluate his testimony and put it in context." (Mot. at 10 (underlining in original).)

The court, however, views this statement as somewhat disingenuous given the centrality of ConnecTel's records and Mr. Peralta's testimony to Plaintiffs' first motion for class certification. Plaintiffs issued a subpoena to ConnecTel, dated October 6, 2011, and Mr. Peralta provided ConnecTel's relevant records in response. (*See* 1st Peralta Decl. ¶ 4.) Mr. Peralta's declaration concerning that subpoena and those records formed one of the main evidentiary bases of Plaintiffs' initial motion for class certification. (*See generally id., see also* Class Cert. Mot.) Plaintiffs' counsel, therefore, must have or should have realized the significance of Mr. Peralta's testimony to their initial motion for class certification at the time they filed it. Although Plaintiffs assert that "because Mr. Peralta submitted declarations in support of Plaintiffs' briefing as well as Defendants, the accuracy of his declaration testimony is questionable" (Mot. at 10), they point to no specific internal consistencies in Mr. Peralta's declarations to support this notion, nor has the court found any. Instead, the court agrees with Plaintiffs' characterization that each successive declaration simply "provided more details" or a "more complete explanation" of ConnecTel's records or processes. (*See* Mot. at 2, 4.) Further, the court agrees with UBC that "Mr. Peralta's willingness to provide declarations to both sides shows he is disinterested, which lends credibility to his testimony," not doubt. (*See* UBC Resp. at 9, n. 5.)

Absent any plea of excusable neglect or other explanation, the court is left to conclude that Plaintiffs' decision not to depose Mr. Peralta during the period allotted for such discovery was simply a tactical decision. Deciding, based on twenty-twenty hindsight, that their decision to delay or forgo Mr. Peralta's deposition was in error or that they should have conducted more discovery at an early time does not amount to excusable neglect under Rule 6(b)(1)(B). *See, e.g., Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1519 (10th Cir.1990) (characterizing failure to file

timely counterclaim as tactical, and thus not due to oversight, inadvertence, or excusable neglect); *Level 3 Commc'ns, Inc. v. Lidco Imperial Valley, Inc.,* No. 11cv01258 BTM (MDD), 2012 WL 4848929, at *8 (S.D.Cal. Oct. 11, 2012) (ruling that "a deliberate decision" is "not excusable neglect"); *In re Veritas Software Corp. Securities Litigation,* No. C–03–0283, 2006 WL 463509, at *4 (N.D.Cal. Feb. 24, 2006) ("[T]actical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b).") (citing *African Am. Voting Rights Legal Defense Fund, Inc. v. Villa,* 54 F.3d 1345, 1350 (8th Cir.1995)).

■ The same can also be said for the remainder of the additional discovery Plaintiffs now request. Plaintiffs were aware of ConnecTel's dialing equipment and related software at the time of their first motion for class certification and could have sought its production or inspection in a timely manner. Plaintiffs actually issued subpoenas to IPS's other third party vendors, but then failed to enforce the subpoenas within the designated time limits. If Plaintiffs had difficulty obtaining timely or adequate responses from these third parties, they could have raised the issue with the court within the class discovery period. They provide no explanation as to why they failed to timely accomplish these tasks. Plaintiffs also provide no explanation for their failure to designate an expert witness to analyze Mr. Peralta's testimony and ConnecTel's call records, equipment and software. Given the centrality of this evidence to Plaintiffs' motion for class certification and the absence of any other explanation, the court is again forced to conclude that Plaintiffs' failure to timely pursue this discovery was a deliberate or tactical decision on counsel's part.

■ The second factor—the length of delay and its potential impact on judicial proceedings—also does not weigh in Plaintiffs' favor. Plaintiffs' action was originally removed to this court nearly eighteen months ago. (*See* Notice of Removal (Dkt. # 1).) Plaintiffs have sought class certification, supplementation of the record on class certification, and reconsideration of the court's

original denial of their motion for class certification. Plaintiffs delayed nearly nine months following the original class discovery cut-off before moving for leave to take additional discovery. The length of Plaintiffs' delay in seeking an extension of this deadline is significant. *See, e.g., Level 3 Commc'ns,* 2012 WL 4848929, at *8 (finding an over ten month delay to be "significant"); *Clackamas Cnty. v. Midwest Emp'rs Cas. Co.,* 2010 WL 5391577, at *8 (D.Or. Dec. 22, 2010) (finding four week delay in filing declarations militates against a finding of excusable neglect). Plaintiffs point to no substantive change that warrants further delay in these proceedings in order to reopen class-related discovery.

With respect to the first factor, IPS (in particular) makes the case that the further delay and added expense caused by Plaintiffs repeated attempts to revisit the same class-related issues will result in prejudice. (IPS Resp. (Dkt. # 106) at 4–5.) Defendants have already responded to Plaintiffs' class discovery requests, Plaintiffs' motion for class certification, Plaintiffs' motion to supplement the record on class certification, and Plaintiffs' motion to reconsider the court's ruling denying class certification. Plaintiffs now propose revisiting the same issues again but with added discovery, including the retention of expert witnesses. IPS asserts that the financial burden of revisiting the same issues repeatedly is taking a toll on its ability to continue functioning as a company. (IPS Resp. at 5.) Plaintiffs' nine month delay in seeking additional class discovery outside of the court's designated period is significant, at least potentially prejudicial to Defendants, and impacts the course of these proceedings nontrivially. Based on the foregoing factors, the court declines to grant Plaintiffs' request to reopen class-related discovery.[3]

**B. Plaintiffs' Motion for Leave to File a Second Motion for Class Certification**

■ Federal Rule of Civil Procedure 23 "confers broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal

---

**3.** Lack of good faith in Plaintiffs' conduct—the fourth and final factor in evaluating excusable neglect—is the only factor that the court finds

does not weigh in Defendants' favor, but it is insufficient to outweigh the impact of the other three factors discussed above.

proceedings before the court." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 106–107 (N.D.Cal.2008) (quoting *Armstrong v. Davis*, 275 F.3d 849, 872 n. 28 (9th Cir.2001)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987–88 (9th Cir.2011) (reversing certification but noting district court may consider whether a different type of class could be certified). Specifically, Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). Accordingly, it is not uncommon for district courts to permit renewed certification motions that set out a narrower class definition or that rely upon different evidence or legal theories. *See, e.g., Bushbeck v. Chicago Title Ins. Co.*, No. C08-0755JLR, 2012 WL 405173, at *2 (W.D.Wash. Feb. 8, 2012); *In re Apple iPod iTunes Antitrust Litig.*, No. 05-0037, 2011 WL 5864036, at *1–2, *4 (N.D.Cal. Nov. 22, 2011).

The court's discretion to reconsider class certification, however, cuts both ways. *In re Initial Public Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir.2007) (District courts "have ample discretion to consider (or decline to consider) a revised class certification motion after initial denial."). Reconsideration of an original class ruling typically occurs as a result of a change in circumstances, *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 387 (N.D.Ill.2006), and "[i]n the absence of materially changed or clarified circumstances ... courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class[.]" Newberg on Class Actions § 7:47; *see also Washington v. Vogel*, 158 F.R.D. 689, 692–93 (M.D.Fla.1994). Thus, Plaintiffs must show some justification for filing a second motion, and not simply a desire to have a second or third run at the same issues.

Here, Plaintiffs have identified no changed circumstances that would warrant a second motion for class certification. The only "changes" have been the court's denial of their first motion for class certification and denial of their motion for reconsideration. Plaintiffs assert that the "proposed revised class definition, coupled with additional discovery and expert analysis and testimony, will enable Plaintiffs to address the Court's concerns" regarding the necessity of conducting individualized hearings. (Mot. at 5.) After reviewing Plaintiffs' motion, however, the court fails to see how its concerns will be alleviated.

Plaintiffs propose changing the salient portions of the class definition from encompassing "[a]ll Washington residents who received one or more commercial solicitations from UBC" to encompassing "[a]ll persons who received a telephone call from UBC ... when such a call included a pre-recorded message lasting longer than 30 seconds, contained a commercial solicitation, and was transmitted to a telephone with a Washington State area code." (*See* Mot. at 6.) First, Plaintiffs apparently continue to operate under the dubious notion that calls with a connect time of more than a certain number of seconds in the ConnecTel records reflect calls that delivered a commercial solicitation. (*See id.* at 8.) As the court has already stated, there is no support in the record for this position (1/2/12 Order (Dkt. # 99) at 10–11), and Plaintiffs' offer none now (*see* Mot. at 8). If anything, the evidence in the record supports the opposite conclusion—that ConnecTel's records are insufficient to identify whether a message played at all or which message played with each identified call irrespective of the indicated connect time. (*See* 1/2/12 Order at 10–11.)[4]

---

4. As the court noted in its January 2, 2013, order denying Plaintiffs' motion to reconsider the court's ruling denying class certification:

Plaintiffs assert that "if a call listed in the records has a connect time beyond a few seconds, it was a call which involved playing a pre-recorded solicitation." (Mot. at 4–5.) In support of this position, Plaintiffs cite the October 19, 2012, declaration of Jeff Peralta. (*Id.* at 5 (citing 10/19/12 Peralta Decl. (Dkt. # 85) ¶ 5).) However, nowhere within Mr. Peralta's October 19, 2012 declaration does the court

find this fact. In fact, Mr. Peralta filed a subsequent declaration rejecting Plaintiffs' characterization of his October 19, 2012 declaration. (11/2/12 Peralta Decl. (Dkt. # 90) ¶ 2.) Mr. Peralta has testified that "[c]alls with connect times of more than a few seconds ... may reflect calls that did not leave any prerecorded message at all." (*Id.*) As Mr. Peralta had previously testified, "some calls with connect times on the log reflect calls that initially connect but disconnect prematurely" either because the business does not accept incoming telephone messages or because the voicemail

In addition, irrespective of whether the number dialed had a Washington State area code, the evidence in the record indicates that Defendants did not know where the person receiving the call would be located. (*See, e.g.,* 6/12/12 Shoger Decl. (Dkt. # 50) ¶ 2 ("IPS could not know with absolute certainty where the business owners were located due to new technology in the telecommunications industry."); 11/2/12 Shoger Decl. (Dkt. # 92) ¶ 4.) Indeed, it was in part for this very reason that IPS ultimately stopped using autodialing. (*See* Sullivan Decl. (Dkt. # 43) Ex. C (Shoger Dep.) at 45:12–20.) Thus, the new class definition would not eliminate the need for individualized hearings with respect to this factual issue.

Plaintiffs counter, however, that it does not matter if the recipient of the call was actually located in Washington or elsewhere because all the statute requires is for the caller to intend to reach a customer in Washington. (Mot. at 8 (citing RCW 80.36.400(2) (WADAD "applies to all commercial solicitation intended to be received by telephone customers within the state")).) Thus, according to Plaintiffs, if the call were made to a phone number with a Washington prefix or area code, then the statutory requirement of an intent to reach someone in Washington would be met irrespective of whether that person was physically in Washington at the time of the call. (*Id.*)

UBC notes, however, that Plaintiffs' proposed statutory interpretation would render WADAD unconstitutional under the dormant Commerce Clause because it would mean that the WADAD would apply to commerce conducted wholly outside of Washington. (UBS Resp. (Dkt. # 104) at 6, n. 3.) Both Defendants in this matter—UBC and IPS—are located outside of Washington. (2d Am. Compl. (Dkt. # 47) ¶ 1.3.) Thus, Plaintiffs' interpretation of WADAD would mean that the statute would encompass calls that were initiated by Defendants outside of Washington State and reached customers who were also outside of Washington State but who happened to have phone numbers with area codes traditionally assigned to Washington State.

■ The Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, has been interpreted as having a "negative" or "dormant" aspect that denies states the authority vested in Congress. *Experience Hendrix, LLC v. HendrixLicensing.com, LTD,* 766 F.Supp.2d 1122, 1141 (W.D.Wash.2011) (citing *Black Star Farms, LLC v. Oliver,* 600 F.3d 1225, 1230 (9th Cir.2010)). Under this clause, the Supreme Court has held that one state may not "project its legislation" into another state and that "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 335, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989). A prohibited extraterritorial law is one in which the "practical effect of the regulation is to control conduct beyond the boundaries of the State." *Id.* at 336, 109 S.Ct. 2491.

In evaluating Plaintiffs' proposed interpretation of WADAD and whether their interpretation would render WADAD in violation of the dormant Commerce Clause, the court finds instructive the decision of the Fourth Circuit Court of Appeals in *Carolina Trucks & Equipment, Inc. v. Volvo Trucks of North America, Inc.,* 492 F.3d 484 (4th Cir.2007). In *Carolina Trucks,* an in-state truck dealership brought an action against an out-of-state truck dealership alleging violation of the South Carolina Dealers Act. The Dealers Act prohibits the sale of motor vehicles by out-of-state manufacturers in South Carolina. *Id.* at 488. Specifically, the statute provides that a manufacturer "may not sell, directly or indirectly, a motor vehicle to a consumer in this State" except through franchises that manufactures are generally prohibited from owning themselves. *Id.* Plaintiffs asserted that the modifier "in this State" referred to the "consumer," and not the entire proscribed sale. In other words, the statute prohibited the sale of vehicles to South Carolina consumers without regard to the state in which the sale occurred. *Id.* at 488–89. Thus, if the transaction occurred wholly within the state of Georgia, but involved a South

---

or answering machine is full. (*Id.* ¶¶ 3–5.) Thus, "ConnecTel's records ... are insufficient ... to identify whether a message played at all

or which specific message played with each identified call." (*Id.* ¶ 6.)
(1/2/13 Order at 10–11.)

Carolina consumer, Plaintiffs argued that the transaction was prohibited under the South Carolina law. *Id.*

The Fourth Circuit, however, was not convinced "that this result was compelled by the text." *Id.* at 489. Instead, the Fourth Circuit found that, although Plaintiffs thought the words "in this State" modified the term "consumer," an equally valid interpretation would be that the words modified the proscribed sales transaction as a whole. *Id.* Because the text of the statute did not compel plaintiffs' reading, the court ruled that it could not adopt it in light of South Carolina's rules of statutory construction that forbid giving the state's laws extraterritorial reach. *Id.* Because reading the statute to cover sales in Georgia "would interpret the statute to 'control conduct'—sales—'beyond the boundaries of the State,'" the Fourth Circuit found that the statute prohibited "only manufacturer-to-consumer sales within South Carolina." *Id.* (quoting *Healy*, 491 U.S. at 336, 109 S.Ct. 2491). By reaching this holding, the Fourth Circuit effectively avoided the dormant Commerce Clause problems inherent in the broader statutory reading plaintiffs had advocated. *Id.*

▉ Like the statute in *Carolina Trucks*, Plaintiffs urge the court to adopt an interpretation of the WADAD in which the words "within the state" modify the term "telephone customers" rather than the "commercial solicitation" that the statute addresses as a whole. Plaintiffs urge this interpretation upon the court in order to overcome the need for individualized hearings concerning whether each class plaintiff was located in Washington State at the time of the offending call. (*See* Mot. at 7–8.) This interpretation, however, is not compelled by the statutory language. Similar to the statute in *Carolina Trucks,* an equally reasonable interpretation of WADAD is that the words "within the state" modify the prohibited commercial solicitation as a whole rather than just the term "telephone customers." *See* RCW 80.36.400(2) (stating in pertinent part that WADAD "applies to all commercial solicitation intended to be received by telephone

customers within the state").[5] Here, the text of the statute in no way compels Plaintiffs' reading, and in fact the court must not adopt it in light of Washington's rule of statutory construction that requires that "[w]here possible, statutes should be construed to avoid unconstitutionality." *Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n*, 141 Wash.2d 245, 4 P.3d 808, 827 (2000); *see also In re Personal Restraint of Matteson*, 142 Wash.2d 298, 12 P.3d 585, 589 (2000) ("Whenever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.") (quoting *State v. Browet, Inc.*, 103 Wash.2d 215, 691 P.2d 571, 574 (1984)). Reading the WADAD as Plaintiffs propose would result in application of the statute to commercial solicitations using automatic dialing and announcing devices that were both initiated and received outside the State of Washington, and would render the statute unconstitutional by virtue of the dormant Commerce Clause. Accordingly, the court declines to adopt Plaintiffs' statutory construction. Because the court declines to adopt Plaintiffs' flawed statutory construction, the court is left with its original conclusion that individualized hearings will be necessary to determine whether the calls at issue were made to telephone customers physically located within Washington State. The court concludes, therefore, that Plaintiffs have failed to articulate any changed circumstances to warrant a second motion for class certification.

▉ Plaintiffs do not provide a substantive response to UBC's assertion that Plaintiffs' interpretation of WADAD would render the statute unconstitutional. Rather, Plaintiffs argue that the constitutionality of WADAD (as interpreted by Plaintiffs) is not before the court. (Reply (Dkt. # 109) at 4–5.) The court, however, disagrees. Plaintiffs placed the issue of statutory construction before the court by proponing their unique construction of WADAD as a means of avoiding the court's ruling concerning the necessity of individualized hearings. UBC merely responded by noting that Plaintiffs'

5. Under Washington law, a statute is ambiguous if it is susceptible to two or more reasonable interpretations arising from the language of the statute itself. *See Five Corners Family Farmers v.*

*State*, 173 Wash.2d 296, 268 P.3d 892, 900 (2011); *Cerrillo v. Esparza*, 158 Wash.2d 194, 142 P.3d 155, 158 (2006).

novel construction would raise serious constitutional issues. (*See* UBC Resp. at 6, n. 3.) Recent Supreme Court precedent requires the court to "probe behind the pleadings before coming to rest on the certification question," and recognizes that "rigorous analysis" of the certification question "will entail some overlap with the merits of the plaintiff's underlying claim" and will be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011). The Ninth Circuit also has clarified that the merits of a case must be considered for instance, under the commonality prong:

> [W]e take this opportunity to clarify the correct standard. As we explained above, the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with the Rule 23(a) requirements.

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir.2011) (emphasis in original). Although these cases deal with motions for class certification rather than motions for leave to file a second motion for class certification, the principle is the same. In determining whether there are any changed or clarified circumstances justifying a second class certification motion, the court must weigh the arguments counsel puts forward even if those issue touch upon, implicate, or overlap the merits of the underlying claim. Thus, the issue of Plaintiffs' novel construction of WADAD and whether it renders the statute unconstitutional as applied here is squarely before the court.

Plaintiffs also object, however, that the court cannot consider the issue because UBC has not notified the Washington State Attorney General that the constitutionality of a Washington State statute is at issue. Federal Rule of Civil Procedure 5.1(a)(1) requires "[a] party that files a ... paper drawing into question the constitutionality of a ... state statute [to] promptly ... file a notice of constitutional question stating the question and identifying the paper that raises it ...

and serve the notice and paper on the ... state attorney general...." Fed.R.Civ.P. 5.1(a)(1). In addition, under Rule 5.1(b), the court also must "certify to the appropriate attorney general that a statute has been questioned" pursuant to 28 U.S.C. § 2403(b). *See* Fed.R.Civ.P. 5.1(b). The attorney general may then intervene within 60 days after the notice or certification. Fed.R.Civ.P. 5.1(c). The court "may not enter final judgment holding the statute unconstitutional" before the time to intervene expires, but "may reject the constitutional challenge" prior to expiration of the period. *Id.* Here, the court has not found that WADAD is unconstitutional. Rather, the court has upheld the statute's constitutionality by rejecting Plaintiffs' novel statutory construction. Thus, the court's present ruling is not prohibited by Rule 5.1(c).

The court also notes that Rule 5.1(d) provides that "[a] party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted." Fed.R.Civ.P. 5.1(d). Further, Rule 5.1(c) does not specify when certification should be made other than "before a final judgment holding the statute unconstitutional." Fed.R.Civ.P. 5.1(c). The court will certify a copy of this decision to the Washington State Attorney General, thereby satisfying the certification requirement. *See Buchanan Cnty., Va. v. Blankenship,* 545 F.Supp.2d 553, 555, n. 3 (W.D.Va.2008) (citing *Tonya K. v. Bd. of Educ.,* 847 F.2d 1243, 1247 (7th Cir.1988); *Wallach v. Lieberman,* 366 F.2d 254, 257–58 (2d Cir.1966)). "Absent indication of harm, or prejudice to the government's opportunity to fully present its views, belated certification, while not ideal, is sufficient to honor the purpose of [28 U.S.C. § ] 2403(b)." *Id.* (quoting *Merrill v. Town of Addison,* 763 F.2d 80, 83 (2d Cir.1985)). The court will entertain a motion for reconsideration if the Washington State Attorney General determines that intervention is necessary.

## IV. CONCLUSION

Based on the foregoing, the court DENIES Plaintiffs' motion for leave to file a second motion for class certification and to

re-open class-related discovery (Dkt. # 103). The clerk is DIRECTED to send a copy of this order to the Attorney General for the State of Washington pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403 certifying that the parties have brought into question the constitutionality of RCW 80.36.400. If the Attorney General chooses to intervene, he must do so no later than 60 days from the date of this order. *See* Fed.R.Civ.P. 5.1(c). The court will entertain a motion for reconsideration of its ruling herein if the Attorney General determines that intervention is necessary.

J.T. et al., Plaintiff,