FILED
COURT OF APPEALS
DIVISION II

2015 AUG 25  AM 8: 44

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RONALD CLIPSE, | No. 45407-6-II |
| Appellant-Cross Respondent, | |
| v. | |
| COMMERCIAL DRIVER SERVICES, INC., a Washington Corporation, and LEE BRUNK and Jane Doe BRUNK, and the marital community comprised thereof, | PUBLISHED OPINION |
| Respondent-Cross Appellant. | |

WORSWICK, P.J. — Ronald Clipse obtained a judgment against Commercial Driver Services, Inc. (CDS) for firing him in violation of the "Washington Law Against Discrimination"[1] (WLAD) and for promissory estoppel. In his appeal, Clipse argues that the trial court erred by (1) granting CDS's motion for judgment as a matter of law and dismissing Clipse's claim for double damages under RCW 49.52.050 and .070, and (2) striking Clipse's late motion for attorney fees and costs. CDS cross-appeals, arguing that the trial court erred by denying CDS's motion for judgment as a matter of law to dismiss Clipse's WLAD and promissory estoppel claims. We reject Clipse's arguments. And although we reverse the trial court's denial of CDS's motion for judgment as a matter of law on Clipse's promissory estoppel claims, we affirm the denial of CDS's motion on Clipse's WLAD claims. Accordingly, we affirm the judgment.

---

[1] Chapter 49.60 RCW.

FACTS

Ronald Clipse was a commercial truck driver. Lee Brunk owned and operated CDS, a commercial driving school. On April 6, 2011, Brunk offered Clipse a job as a driving instructor, saying, "[W]elcome aboard." Verbatim Report of Proceedings (VRP) (Aug. 21, 2013) at 74. Clipse then quit his existing job in anticipation of beginning work at CDS. Clipse understood what at-will employment was, and he understood the CDS position to be an at-will job.

Just prior to Clipse's scheduled start date of April 18, Brunk asked Clipse to undergo a physical examination to determine whether Clipse could obtain a medical examiner's certificate qualifying him to drive a commercial vehicle. *See* RCW 46.25.057; 49 U.S.C. § 31149 (2012). Clipse's physical examination revealed that he was taking the narcotic drug methadone for chronic pain from a torn rotator cuff. The examining physician gave Clipse a 30 day medical examiner's certificate. After Clipse provided further documentation from his doctors showing that he could safely drive while on his medication, the examining physician provided Clipse with a one year medical examiner's certificate.

When Brunk received the results of Clipse's physical examination, he told Clipse to get "cleaned up." VRP (Aug. 20, 2013) at 31. Brunk told Clipse that CDS could not employ him because he was taking methadone. According to Clipse, Brunk said he thought Clipse might "relapse." VRP (Aug. 21, 2013) at 84.

CDS described its reasons for not hiring Clipse in several different ways: it claimed that Clipse had failed his physical examination, that CDS had a "no tolerance" drug policy, that CDS required a one year medical examiner's certificate, or alternatively that CDS required a two year medical examiner's certificate. Brunk said that it was CDS's "standard practice" to require a two

year medical examiner's certificate, although CDS had no written policy to this effect. VRP (Aug. 20, 2013) at 14. The sole reference to drugs in CDS's Employee Guidelines prohibited the "use or possession of alcohol or controlled substances" on CDS's grounds, and prohibited employees from reporting to work "while under the influence of alcohol or any unlawful controlled substance." Ex. 12. The drug policy made no reference to prescription drugs.

Clipse understood that methadone had side effects: he knew the drug could slow a driver's reflexes and cause a driving hazard. At the time of trial, there was conflicting evidence about whether Clipse was qualified to drive commercially. Federal law prohibited narcotics users from driving commercially, but the law contained an exception for those whose doctors had prescribed the narcotics and who had a doctor's advisement that the drug use would not affect the driver's safety. Clipse's doctor prescribed methadone to him and advised him that he could safely drive while on the drug. But Federal Motor Carrier Safety Administration advisory criteria provided that anyone taking methadone was not medically qualified to drive.

Clipse sued CDS and Brunk, alleging discrimination and promissory estoppel, and seeking double damages under RCW 49.52.050 and .070. He alleged that CDS discriminated against him on the basis of a disability contrary to the WLAD. Clipse alleged that CDS "treat[ed] him adversely" and failed to accommodate him because he was disabled or CDS perceived him to be disabled, but the complaint did not specify what disability Clipse had or was perceived to have had. CP at 3.

CDS moved for summary judgment under CR 56, arguing that Clipse was not qualified for the position. CDS also argued that Clipse failed to present a prima facie case of

discrimination under the WLAD, because he had not identified his disability to CDS. The trial court denied this motion, and the case proceeded to a jury trial.

At trial, Brunk and Clipse testified to the facts discussed above.[2] At the close of evidence, CDS moved for judgment as a matter of law on Clipse's claim for double damages under RCW 49.52.050 and .070, and on his WLAD and estoppel claims. The court granted CDS's motion for judgment as a matter of law on double damages. But the trial court denied CDS's motion for judgment as a matter of law on the WLAD and promissory estoppel claims.

The jury answered "yes" to the questions: "Did defendants discriminate against plaintiff in employment because of a disability?" and "Were defendants estopped by promissory estoppel from denying plaintiff employment?" CP at 472-73. The jury awarded Clipse $79,300 for past wages and $5,700 for noneconomic damages. Clipse prepared the order of judgment. The judgment, dated August 28, 2013, stated that it "[r]eserved" attorney fees and costs. CP at 474. On September 11, Clipse moved for attorney fees.

CDS moved to strike Clipse's motion for fees and costs under CR 54(d)(2) for being untimely, claiming that Clipse had missed the September 9 deadline for filing his request for attorney fees. Clipse then cross-moved under CR 6(b)(2) to enlarge time to file his motion for fees and costs. He argued alternatively that the time limit in CR 54(d)(2) did not apply because the order said fees and costs were "reserved." CP at 620. The trial court rejected Clipse's argument that "reserved" meant the time limit did not apply. The trial court ruled that Clipse had

---

[2] The report of proceedings is incomplete; it contains testimony from Clipse and Brunk only. It does not contain medical testimony, although the record and counsel's statements at oral argument suggest that doctors testified.

not demonstrated that his late filing was the result of "excusable neglect" because Clipse did not

explain why he filed late. VRP Sept. 20, 2013 at 22. Thus, the trial court denied Clipse's motion

to enlarge time and granted CDS's motion to strike the request for fees and costs.

Clipse appeals, and CDS cross-appeals.

ANALYSIS

I. DOUBLE DAMAGES

Clipse argues that the trial court erred by granting CDS's motion for judgment as a matter

of law on Clipse's claim for double damages under RCW 49.52.050 and .070. We disagree.

A.      *Standard of Review*

We review de novo the trial court's decision on a motion for judgment as a matter of law.

*Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 619, 285 P.3d 187 (2012). We view all

evidence and draw all inferences in the light most favorable to the nonmoving party and uphold

the trial court's granting a judgment as a matter of law only where there is no evidence or

reasonable inference to sustain a verdict for the nonmoving party. *Byrne v. Courtesy Ford, Inc.*,

108 Wn. App. 683, 687, 32 P.3d 307 (2001).

We review statutory interpretation de novo. *State, Dep't of Ecology v. Campbell &*

*Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We use the plain language of the statute to

ascertain the legislature's intent, giving effect to all words used. *Campbell & Gwinn*, 146 Wn.2d

at 9-10.

B.      *Double Damages Inapplicable*

The WLAD prohibits employment discrimination based on a disability or other protected

class. RCW 49.60.030(1) and .180(1). A worker subject to illegal discrimination under the

WLAD may obtain actual damages, including back wages, resulting from the discrimination. RCW 49.60.030(2).

RCW 49.52.050(2) prohibits an employer from paying an employee "a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.070 creates civil liability, including double damages, costs, and attorney fees, for violations of RCW 49.52.050. Therefore, an employer that willfully pays a lower wage than it is obligated to pay is liable for double damages.

RCW 49.52.050 does not impose liability on an employer unless it pays a wage less than it is "obligated to pay" under a statute. The word "obligated" implies a preexisting duty to pay a specific wage. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). By contrast, any back wages a plaintiff receives under the WLAD for adverse employment actions do not accrue until the jury reaches a verdict. *Hemmings*, 285 F.3d at 1203. Thus, retrospective WLAD damages are not wages the employer was obligated to pay, because there was no preexisting duty to pay these specific wages. *Hemmings*, 285 F.3d at 1203. We apply the plain language of RCW 49.52.050 and hold that retrospective jury damages in a WLAD suit are not wages employers are "obligated" by statute to pay, thus precluding an award for double damages. RCW 49.52.050; *Hemmings*, 285 F.3d at 1203; *Campbell & Gwinn*, 146 Wn.2d at 9-10.

Our holding follows the Ninth Circuit Court of Appeal's decision in *Hemmings*. 285 F.3d at 1203-04. In *Hemmings*, the Ninth Circuit held that the plain language of the word "obligated" in RCW 49.52.050, as well as the purpose of that statute, demonstrated that retrospective jury damages in a WLAD lawsuit were not subject to double damages. 285 F.3d at 1203-04.

Clipse cites *Allstot v. Edwards*, 114 Wn. App. 625, 60 P.3d 601 (2002), to support his argument that he is entitled to double damages. In *Allstot*, Division Three of this court held that double damages under RCW 49.52.050 and .070 applied to back wages for wrongful termination of a police officer under a statute providing for terminating police officers. 114 Wn. App. at 631, 633-35. But in *Allstot*, the police officer and the employer had stipulated to the payment of back wages and retirement benefits. 114 Wn. App. at 631. The *Allstot* court held that the stipulation created an obligation to pay specific wages that preexisted the jury's verdict. 114 Wn. App. at 634-35; *see* RCW 49.52.050. Here, because CDS's obligation to pay Clipse back wages did not accrue until the jury reached a verdict on damages, the WLAD damages are not subject to RCW 49.52.050. *Hemmings*, 285 F.3d at 1203-04. Thus, we affirm the trial court's grant of judgment as a matter of law to CDS.

## II. ATTORNEY FEES AND COSTS

Clipse next argues that the trial court erred by striking his motion for reasonable attorney fees and costs and by denying his motion to enlarge time to move for fees and costs. Again, we disagree.

### A.    *Standard of Review*

We review the trial court's decision to accept or reject untimely filed documents for an abuse of discretion. *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 499, 183 P.3d 283 (2008). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *O'Neill v. City of Shoreline*, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014). A decision is manifestly unreasonable if the trial court takes a view that no reasonable person would take. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010). And a

trial court's decision rests on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on unsupported facts. *Salas*, 168 Wn.2d at 669.

B.    *No Abuse of Discretion*

Clipse argues that the trial court abused its discretion by striking his motion for fees because the motion was not late, and even if the motion was late, the trial court should have enlarged his time to file. He argues that the late filing constituted "excusable neglect" under CR 6(b) because the order of judgment stated fees and costs were "[r]eserved." Br. of Appellant at 29.

CR 54(d) requires the clerk of the court to enter statutory attorney fees and costs if the prevailing party does not file for attorney fees and costs within 10 days of the judgment unless otherwise provided by statute or court order. A court may enlarge time deadlines under CR 6(b) either before or after a deadline has passed, but if the deadline has passed, the court may enlarge the deadline only if the party's lateness was the result of excusable neglect. CR 6(b)(2). Here, because Clipse moved to enlarge time after the deadline had passed, the trial court was permitted to enlarge time only if Clipse demonstrated excusable neglect.

1. *Motion was Late*

Clipse first argues that the motion was not late because, by saying fees and costs were "reserved," the order of judgment superseded the 10 day deadline under CR 54(d)(2). We disagree.

The word "reserved" in the trial court's order does not appear to refer to a filing deadline; instead, it refers to the fact that the trial court had not yet decided attorney fees and costs. The

ordinary meaning of "reserved" is that the court would decide attorney fees and costs at a later date, not that Clipse had unlimited time in which to file his motion.

Second, Clipse argues that his subjective purpose in writing "reserved" in the proposed order of judgment was to extend time. But he provides no authority for the proposition that his subjective intent controls the effect of the court's order.

Third, Clipse argues that the word "reserved" extended his time to file because the clerk of the court did not enter statutory attorney fees under CR 54(d)(1) as the clerk must do when a party does not timely move for fees and costs. Br. of Appellant at 31. Thus, Clipse argues, the clerk must have understood the judgment's "reserved" language to mean Clipse's motion was not due by the usual deadline under CR 54(d)(2). But Clipse does not explain how the clerk's subjective understanding of a court order imbues the order with particular meaning. Clipse's arguments fail.

### 2. *Trial Court Did Not Abuse Its Discretion*

Clipse further argues that the trial court abused its discretion by denying his motion to enlarge time, because the court failed to apply four discrete elements when considering whether to enlarge time under CR 6. We disagree.

Clipse cites *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 595 (W.D. Wash. 2013), which discusses the Federal Rule of Civil Procedure (FRCP) 6(b), not Washington's CR 6. FRCP 6(b) does not apply to Clipse's case. Instead, courts in Washington use their discretion in applying CR 6, and may do so only after time has passed upon a showing of excusable neglect. *Davies*, 144 Wn. App. at 499.

Here, Clipse failed to show excusable neglect. He did not present any explanation for why he failed to timely file the motion. Instead, he argued that the untimely filing was excusable because the delay was only two days, and argued in the alternative that the motion was not filed untimely because the judgment said fees and costs were "reserved." CP at 620.

The trial court did not abuse its discretion by denying Clipse's motion to enlarge time under CR 6(b). The trial court's decision was not legally or factually flawed, nor was it one that no reasonable person would take. *Salas*, 168 Wn.2d at 669. Thus, the trial court did not abuse its discretion by striking Clipse's late motion for fees and costs.

### III. CDS'S CROSS-APPEAL—JUDGMENT AS A MATTER OF LAW

CDS cross-appeals, arguing that the trial court erred by denying its motion for judgment as a matter of law on Clipse's WLAD and promissory estoppel claims.[3] We agree in part and disagree in part. Although the trial court erred in refusing to grant CDS judgment as a matter of law on Clipse's promissory estoppel claims, it did not err in denying CDS's motion for judgment as a matter of law on Clipse's WLAD claim. We therefore affirm the jury's verdict finding CDS liable under the WLAD, and we affirm the jury's damages award.

A.    *Standard of Review*

We review a trial court's denial of a CR 50 motion for judgment as a matter of law de novo, engaging in the same inquiry as the trial court. *Davis v. Microsoft Corp.*, 149 Wn.2d 521,

---

[3] Although CDS appeals the trial court's denial of both its motion for judgment as a matter of law and its motion for summary judgment dismissal, its arguments focus exclusively on the motion for judgment as a matter of law. Clipse argues that CDS has abandoned its appeal of the summary judgment denial. We agree, and we do not consider the appeal of the summary judgment denial. *Edwards v. Le Duc*, 157 Wn. App. 455, 459 n.5, 238 P.3d 1187 (2010).

530-31, 70 P.3d 126 (2003).[4] A trial court's grant of a motion for judgment as a matter of law is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party as a matter of law. *Davis*, 149 Wn.2d at 531. Substantial evidence is evidence "'sufficient . . . to persuade a fair-minded, rational person of the truth of a declared premise.'" *Davis*, 149 Wn.2d at 531 (quoting *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605 (1963)).

We look to a statute's plain language to give effect to the legislature's intent. *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 360, 287 P.3d 51 (2012). If the statute is unambiguous, it is not open to judicial interpretation. *Davis*, 171 Wn. App. at 360. We avoid "disregarding an otherwise plain meaning and inserting or removing statutory language." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). We construe the WLAD liberally to effectuate its purpose of preventing discrimination. *Martini v. Boeing Co.*, 137 Wn.2d 357, 364, 971 P.2d 45 (1999) (citing RCW 49.60.020).

B.  *Judgment as a Matter of Law*

1.  *Clipse Established a Prima Facie WLAD Case*

CDS first argues that the trial court erred by denying its motion for judgment as a matter of law on Clipse's WLAD claim at the end of trial because Clipse did not prove that he (1) had a qualifying disability under the WLAD, (2) was qualified for the position, and (3) was entitled to

---

[4] Although WLAD cases from before 2007, including *Davis v. Microsoft Corp.*, 149 Wn.2d at 532, use a definition of "disability" that has since been superseded by statute, the propositions for which we cite them have not been altered.

accommodation. We disagree because Clipse presented a prima facie case of these elements of his WLAD claims.[5]

a. *Qualifying Actual or Perceived Disability*

CDS first argues that Clipse failed to present evidence sufficient to withstand a motion for judgment as a matter of law because he did not establish that he had or was perceived to have a condition constituting a disability under the WLAD. We disagree.

The WLAD prohibits employment discrimination, including refusal to hire, based on a sensory, mental, or physical disability. RCW 49.60.030(1) and .180(1). The act defines "[d]isability" as

> the presence of a sensory, mental, or physical impairment that
>
> (i) Is medically cognizable or diagnosable; or
> (ii) Exists as a record or history; or
> (iii) Is perceived to exist whether or not it exists in fact.

RCW 49.60.040(7)(a).

> An "impairment" includes, but is not limited to, the following:
>
> (i) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic, skin, and endocrine; or

---

[5] Clipse argues that CDS failed to preserve its objection to the trial court's denial of judgment as a matter of law because it failed to request a new trial or judgment notwithstanding the verdict. In support, he cites *Washburn v. City of Fed. Way*, 169 Wn. App. 588, 614, 283 P.3d 567 (2012), *aff'd on other grounds*, 178 Wn.2d 732, 310 P.3d 1275 (2013). But the Supreme Court reversed the Court of Appeals on this issue, holding that Washington law contained no such requirement to preserve a motion for judgment as a matter of law. *Washburn*, 178 Wn.2d at 749-50.

(ii) Any mental, developmental, traumatic, or psychological disorder, including but not limited to cognitive limitation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

RCW 49.60.040(7)(c).

There are two types of disability discrimination claims: disparate treatment and failure to accommodate. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004); *Brownfield v. City of Yakima*, 178 Wn. App. 850, 873, 316 P.3d 520 (2013). In his complaint, Clipse claimed both disparate treatment and failure to accommodate.[6] Clipse claimed two separate theories of his disability: either (1) he was in fact disabled by his use of methadone, or (2) he was not disabled, but was perceived as having an unspecified disability. The jury was instructed on both theories.

Clipse's first alternative theory of disability was that CDS disparately treated him and failed to accommodate his actual disability stemming from the side effects of methadone.[7] To

---

[6] Clipse acknowledges that he did not use the words "disparate treatment" in his complaint, but he argues that he sufficiently pleaded disparate treatment by alleging that CDS "'refused to let him work, therefore treating him adversely because of disability.'" Reply Br. of Appellant at 30 n.11. The jury was instructed on disparate treatment and CDS did not object. Thus, we hold that Clipse presented a disparate treatment theory.

[7] We note that courts in Washington have never decided whether taking a drug may constitute a disability under the WLAD. Occasionally, courts have assumed without deciding that taking drugs or being a drug addict is a disability. But none of these cases has arisen since the legislature defined "disability" in 2007. *See Phillips v. City of Seattle*, 111 Wn.2d 903, 909, 766 P.2d 1099 (1989) (holding that whether alcoholism is a disability is a question of fact, not law); *Brady v. Daily World*, 105 Wn.2d 770, 777, 718 P.2d 785 (1986) (declining to decide whether alcoholism was a disability under the WLAD); *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 371, 112 P.3d 522 (2005) (assuming without deciding that drug and alcohol dependency could be a disability, but holding that the plaintiff did not make a prima facie showing of a causal relationship between the dependency and discrimination); *Phillips v. City of Seattle*, 51 Wn. App. 415, 419, 754 P.2d 116 (1988), *aff'd* 111 Wn.2d 903, 766 P.2d 1099 (1989) (holding that even if alcoholism were a disability, it did not disable the plaintiff); *Rhodes v. URM*

13

constitute a "disability" under the statute, taking methadone must constitute a "sensory, mental, or physical impairment." RCW 49.60.040(7). "Impairment" is defined as a non-exclusive list of terms including any "physiological disorder, or condition, cosmetic disfigurement, or anatomical loss" affecting the body's systems, or any "mental, developmental, traumatic, or psychological disorder." RCW 49.60.040(7)(c). Thus, under the plain language of the statute, any mental or physical condition may be a disability. RCW 49.60.040(7). We apply this plain language and construe the statute liberally to effectuate its purpose of remedying disability discrimination. *Martini*, 137 Wn.2d at 364; *Davis*, 171 Wn. App. at 360. Thus, we hold that the side effects of a prescription drug may constitute a disability, so long as those side effects meet the statutory definition.

---

*Stores, Inc.*, 95 Wn. App. 794, 800, 977 P.2d 651 (1999) (assuming without deciding that drug abuse might be a disability, but that any discrimination was justified by an employee handbook prohibiting drugs).

We also note that under the federal Americans with Disabilities Act (ADA), an employee or job applicant currently taking illegal drugs is excluded from relief. 42 U.S.C. § 12114(a) (2009). But if a drug is prescribed by a doctor, it is not an illegal drug. 28 C.F.R. § 35.104 (2011) (defining the "[i]llegal use of drugs"). And under the ADA, side effects from medical treatment may constitute a disability in limited circumstances. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 187 (3d Cir. 2010) ("[I]t is not enough to show just that the potentially disabling medication or course of treatment was prescribed or recommended by a licensed medical professional. Instead . . . the medication or course of treatment must be required in the 'prudent judgment of the medical profession,' and there must not be an available alternative that is equally efficacious that lacks similarly disabling side effects. The concept of 'disability' connotes an involuntary condition, and if one can alter or remove the 'impairment' through an equally efficacious course of treatment, it should not be considered 'disabling.'") (citation omitted) (quoting *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1052 (7th Cir. 1997)). And addiction to opiates can be a disability under the ADA, so long as the addict is not taking illegal drugs. *Start, Inc. v. Baltimore County., Md.*, 295 F. Supp. 2d 569, 576 (D. Md. 2003).

Here, Clipse presented evidence at trial that taking methadone had impairing physical side effects. Thus, he presented a prima facie claim that he actually had a disability: he showed that his use of methadone may have been a physical impairment and thus a disability under the WLAD. *See* RCW 49.60.040(7). Using the *Davis* test, we view this evidence in the light most favorable to Clipse to determine whether it is sufficient to sustain a jury verdict that Clipse was actually disabled. *See Davis*, 149 Wn.2d at 531. We hold that it is.

Clipse's second alternative theory was that CDS discharged him because it perceived him to have an unspecified disability.[8] We note that case law about perceived disability claims in Washington is very sparse. We also recognize the inherent difficulty a plaintiff faces in making out a claim of perceived disability discrimination, which necessarily involves subjective ideas and intents of the employer. But we apply the statute's plain language, which defines a disability as (among other things) a mental, physical, or sensory impairment that is perceived to exist, whether or not it exists. RCW 49.60.070(7). Thus, under the statute's plain language, a plaintiff may make out a prima facie claim of disability discrimination based on a perceived disability by presenting evidence that an employer perceived a disability.

Clipse carried that burden here. He provided evidence that when Brunk learned Clipse was taking methadone, Brunk said Clipse needed to get "cleaned up" and that Brunk was afraid Clipse might "relapse." VRP (Aug. 20, 2013) at 31; VRP (Aug. 21, 2013) at 84. The evidence also showed that CDS provided changing and inconsistent justifications for its decision not to

---

[8] We note that for purposes of a perceived disability claim, a plaintiff may rely only on a disparate treatment theory. There can be no failure to accommodate a disability that does not exist but is merely perceived. RCW 49.60.040(7)(d).

hire Clipse. This evidence, viewed in the light most favorable to Clipse, is sufficient to sustain a jury verdict that CDS perceived that Clipse had a disability and discharged him because of it. Thus, we hold that Clipse presented substantial evidence of the "disability" prong of his WLAD claims. *Davis*, 149 Wn.2d at 531.

### b. *Otherwise Qualified*

CDS next argues that Clipse failed to present evidence that he was a qualified candidate for the position. We disagree.

Clipse provided evidence that he was qualified to perform the job: he showed that he had a medical examiner's certificate and experience in commercial truck driving. He also presented evidence that Brunk offered him the job, saying: "[W]elcome aboard." VRP (Aug. 21, 2013) at 74. These facts suggest that Clipse was qualified. There was conflicting evidence at trial about whether Washington State Department of Transportation regulations truly disqualified any driver from using methadone, and whether CDS in fact had a restrictive internal policy concerning drugs. Thus, the evidence of this element of Clipse's WLAD claim, when viewed in the light most favorable to Clipse, is sufficient to sustain a jury verdict in his favor. *See Davis*, 149 Wn.2d at 531. A fair-minded, rational person could be persuaded that Clipse was qualified for the position at CDS despite his use of prescribed methadone. *Davis*, 149 Wn.2d at 531.

### c. *Entitled to Accommodation*

Finally, CDS argues that Clipse failed to present evidence that he was entitled to accommodation. Again, we disagree.

16

CDS argues that, because Clipse was not disabled, CDS did not fail to accommodate him. But as we discuss above, Clipse presented evidence that he was actually disabled under the WLAD. CDS also argues that it had no obligation to change its drug policies to accommodate Clipse. But there was conflicting evidence at trial regarding whether CDS in fact had a drug policy that prevented prescription drugs. Thus, there was sufficient evidence to sustain a jury verdict that CDS had an obligation to accommodate Clipse.

Taking Clipse's evidence as true and taking all inferences in his favor, we hold that he provided substantial evidence supporting these elements of his WLAD claim. *Davis*, 149 Wn.2d at 531. Therefore, the trial court properly denied CDS's motion for judgment as a matter of law on Clipse's WLAD claim.

### 2. *No Prima Facie Promissory Estoppel Case*

CDS argues that the trial court erred by denying its motion for judgment as a matter of law to dismiss Clipse's promissory estoppel claim at the end of trial. Because Clipse failed to present any evidence that CDS promised him permanent employment, we agree.

The elements of promissory estoppel are "'(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.'" *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 171-72, 876 P.2d 435 (1994) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980)). Where employment was terminable at will, "the promise for promissory estoppel must be a . . . clear and definite promise

of permanent employment subject only to dismissal for just cause." *Havens*, 124 Wn.2d at 173-74.

Here, Clipse presented no evidence that CDS or Brunk promised him permanent employment subject only to dismissal for just cause. *See Havens*, 124 Wn.2d at 174. He testified that he understood at-will employment and understood that the position at CDS was at will. He did not testify to any statements by Brunk or CDS establishing a promise of permanent employment; instead, he showed merely that CDS and Clipse both hoped the working relationship would succeed. Such hopeful statements do not establish the necessary promise. *Havens*, 124 Wn. App. at 174. Thus, Clipse failed to present sufficient evidence to persuade a fair-minded, rational person that CDS made a clear and definite promise giving rise to promissory estoppel. The trial court erred by denying CDS's motion for judgment as a matter of law on this issue.

Thus, we affirm the trial court's denial of CDS's motion for judgment as a matter of law on Clipse's WLAD claims. We affirm the jury's special verdict finding CDS liable under the WLAD. We hold that the trial court erred by denying CDS's motion for judgment as a matter of law on Clipse's promissory estoppel claim, and thus, we reverse the jury's special verdict finding CDS liable for promissory estoppel.

3. *Damages Verdict*

Finally, we turn to the jury's damage award. The jury found CDS liable under both the WLAD and promissory estoppel, but its damages award did not distinguish between the two

18

theories. Therefore, we must address whether reversal of the promissory estoppel claim requires us to reverse the damages verdict. We hold that it does not.

The WLAD permits the following damages:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

RCW 49.60.030(2). "Actual damages" can include "back pay, front pay, mental anguish, and emotional distress." *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 114 Wn. App. 80, 97, 55 P.3d 1208 (2002), *aff'd in part on other grounds*, 151 Wn.2d 203, 87 P.3d 757 (2004). Noneconomic damages, such as mental anguish and emotional distress, are left to the discretion of a properly instructed jury. *Bunch v. King County. Dep't of Youth Servs.*, 155 Wn.2d 165, 180, 116 P.3d 381 (2005). CDS does not argue that the jury was improperly instructed on damages, nor that the jury improperly computed damages.

The jury awarded Clipse $79,300 for back pay, apparently representing somewhat less than the roughly $90,000 he might have earned from his purported start date until trial. The jury also awarded $5,700 in noneconomic damages, which may represent mental anguish or emotional distress. Because these damages are allowable under the WLAD and because the jury found CDS liable under the WLAD, we affirm the damage award.

ATTORNEY FEES

Clipse requests reasonable attorney fees under chapters 49.52 and 49.60 RCW, citing only RAPs 14.1 and 14.2. We deny this request. First, only costs, not reasonable attorney fees, are available under RAPs 14.1 and 14.2. Second, because we rule that Clipse cannot recover double damages under RCW 49.52.050 and .070, chapter 49.52 RCW is inapplicable. Third, Clipse fails to include a separate section for attorney fees in his brief as required by RAP 18.1(b).

CDS also requests reasonable attorney fees and costs pursuant to RAPs 18.1, 14.1, 14.2. We deny these requests because there is no basis for them. RAP 18.1 permits us to grant attorney fees to a party entitled to them under applicable law. CDS argues that chapters 49.60 and 46.25 RCW, and "equitable ground[s]" are applicable law. Br. of Resp't at 49. But CDS does not cite any specific statutory section or case entitling them to attorney fees on appeal; it is thus not entitled to attorney fees for failing to cite authority. *Wilson Court Ltd. P'ship v. Tony Maroni's Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). Furthermore, independent research into chapter 49.60 RCW reveals that a plaintiff in a WLAD action, not a defendant employer, is entitled to attorney fees. RCW 49.60.030(2). And chapter 46.25 RCW does not appear to provide any basis for attorney fees. Thus, CDS is not entitled to attorney fees on appeal.

CONCLUSION

In conclusion, we reverse the trial court's denial of CDS's motion for judgment as a matter of law on Clipse's promissory estoppel claim. We affirm the trial court's orders granting CDS judgment as a matter of law on Clipse's claim for double damages under RCW 49.52.050 and .070 and striking Clipse's late motion for fees and costs. And we affirm the trial court's

No. 45407-6-II

denial of CDS's motion for judgment as a matter of law on Clipse's WLAD claims.

Accordingly, we affirm the verdict finding CDS liable under the WLAD and we affirm the

damage award.  We deny both parties' requests for reasonable attorney fees and costs on appeal.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

21