FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CASEY TAYLOR; ANGELINA TAYLOR, husband and wife and the marital community composed thereof, *Plaintiffs-Appellants*, | No. 16-35205 D.C. No. 2:11-cv-01289-JLR |
| v. | ORDER CERTIFYING A QUESTION TO THE WASHINGTON SUPREME COURT |
| BURLINGTON NORTHERN RAILROAD HOLDINGS INC., a Delaware Corporation licensed to do business in the State of Washington; BNSF RAILWAY COMPANY, a Delaware Corporation licensed to do business in the State of Washington, *Defendants-Appellees.* | |

Filed September 17, 2018

Before: Raymond C. Fisher, Ronald M. Gould
and Richard A. Paez, Circuit Judges.

Order

## SUMMARY[*]

### Employment Discrimination

The panel certified to the Washington Supreme Court the following question:

> Under what circumstances, if any, does obesity qualify as an "impairment" under the Washington Law against Discrimination, Wash. Rev. Code § 49.60.040?

## COUNSEL

Shelby R. Frost Lemmel (argued) and Kenneth W. Masters, Masters Law Group P.L.L.C., Bainbridge Island, Washington; Jay R. Stephens, The Stephens Law Firm PS, Puyallup, Washington; for Plaintiffs-Appellants.

Bryan P. Neal (argued), Thompson & Knight LLP, Dallas, Texas; Britenae Pierce and Teruyuki S. Olsen, Ryan Swanson & Cleveland PLLC, Seattle, Washington; for Defendants-Appellees.

Paul D. Ramshaw (argued), Attorney; Margo Pave, Assistant General Counsel; Jennifer S. Goldstein, Associate General Counsel; P. David Lopez, General Counsel; Office of General Counsel, Equal Employment Opportunity

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Commission, Washington, D.C.; for Amicus Curiae Equal Employment Opportunity Commission.

## ORDER

Casey Taylor alleges in part that his prospective employer, BNSF Railway Company (BNSF), discriminated against him in violation of the Washington Law Against Discrimination (WLAD) when it perceived him to be physically impaired and, as a result, withdrew his employment offer. This appeal raises an important question of Washington law: whether and when obesity qualifies as an "impairment" under the WLAD, Wash. Rev. Code § 49.60.040. Because there is no controlling precedent on this question, and the answer to the question is determinative of this appeal, we respectfully certify it to the Washington Supreme Court.

## I. Background

BNSF extended Taylor an offer of employment as an electronic technician, conditioned on his completing a medical history questionnaire and undergoing a physical exam. BNSF's medical examiner determined Taylor met the physical qualifications for the position but referred him to the company's chief medical officer because he weighed 256 pounds at a height of 5-feet, 6-inches, yielding a Body Mass Index (BMI) of 41.3. A BMI over 40 is considered "severely" or "morbidly" obese, and BNSF treats a BMI over 40 as a "trigger" for further screening in the employment process. BNSF advised Taylor, in pertinent part: "The BNSF Medical Officer is unable to determine medical qualification for Electronic Technician position due to significant health and safety risks associated with extreme

obesity (Body Mass Index near or above 40)." BNSF offered to reconsider Taylor's medical qualification if he undertook further – and costly – medical testing:

> If you choose to supply this information, we can evaluate your condition again, but please note that simply providing these reports does not guarantee qualification.

> If you choose not to obtain this information at this time, your case can be reconsidered if you lose at least 10% of your weight (26 pounds) and maintain that weight for at least 6 months.

When Taylor indicated he lacked the ability to pay for the testing, BNSF did not offer financial aid.

Taylor filed this action against BNSF in Washington state court, asserting a single claim of disability discrimination under the WLAD. He alleged BNSF denied him employment because it perceived him as disabled due to obesity. After BNSF removed the action to federal court based on diversity of citizenship, the district court granted summary judgment to BNSF, and Taylor appealed.

To prevail under the WLAD, Taylor must establish both that (1) obesity constitutes a disability under the WLAD and (2) BNSF's withdrawal of its employment offer on account of his failure to pay for additional medical testing constitutes actionable discrimination under the WLAD.

As to the second question, we recently held in *EEOC v. BNSF Railway Co.*, No. 16-35457, 2018 WL 4100185, ___ F.3d ____ (9th Cir. Aug. 29, 2018), that an employer engages in prohibited discrimination under the federal

Americans with Disabilities Act (ADA) when it withdraws a conditional offer of employment based on a prospective employee's failure to pay for medical testing that the employer has required solely because of the prospective employee's perceived disability or impairment. *See id.*, 2018 WL 4100185, at \*8–9; \_\_\_ F.3d at \_\_\_\_\_. As a general matter, the WLAD is *at least* as broad as the ADA:

> Even though almost all of the WLAD's prohibitions predate Title VII's, the ADA's, and the [Age Discrimination in Employment Act]'s, Washington courts still look to federal case law interpreting those statutes to guide our interpretation of the WLAD. Federal cases are not binding on this court, which is "free to adopt those theories and rationale which best further the purposes and mandates of our state statute." *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wash. 2d 355, 361–62, 753 P.2d 517 (1988). Where this court has departed from federal antidiscrimination statute precedent, however, it has almost always ruled that the WLAD provides greater employee protections than its federal counterparts do.

*Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 197–98 (Wash. 2014) (footnotes omitted). Thus, for purposes of our analysis, we assume that, as under the ADA, an employer discriminates in violation of the WLAD when it withdraws a conditional offer of employment based on a prospective employee's failure to pay for medical testing that the employer has required solely because of the prospective employee's perceived disability or impairment. We need not certify that question to the Washington Supreme Court.

As to the first question, this court has not yet addressed whether or when obesity qualifies as a disability or impairment under the ADA and, as we discuss below, other jurisdictions are divided on that question. Furthermore, even if we were to decide that the ADA treats obesity as a disability in only limited circumstances, Washington law may well provide broader coverage. As noted, where the Washington Supreme Court "has departed from federal antidiscrimination statute precedent, . . . it has almost always ruled that the WLAD provides greater employee protections than its federal counterparts do." *Id.*

Because the ADA's coverage of obesity is an open question in this circuit and, in any event, Washington law may be broader, we conclude it is appropriate to certify this important question of Washington law to the Washington Supreme Court.

In sum, we have concluded that the outcome of this appeal turns on whether obesity constitutes an "impairment" and thus a "disability" under Washington law. In light of the importance of the issue and the absence of controlling legal authority, we now certify that question to the Washington Supreme Court.

## II. Explanation of Certification Request

Assuming the Washington Supreme Court accepts certification, it may wish to consider the following authority.

## A. Statutory Text

The WLAD makes it an "unfair practice" for an employer to refuse to hire an applicant because of "the presence of any sensory, mental, or physical *disability*" unless "the particular disability prevents the proper

performance of the particular worker involved." Wash. Rev. Code § 49.60.180 (emphasis added). A "disability" is "the presence of a sensory, mental, or physical *impairment* that:" (1) "[i]s medically cognizable or diagnosable," (2) "[e]xists as a record or history" or (3) "[i]s perceived to exist whether or not it exists in fact." *Id.* § 49.60.040 (emphasis added). An "impairment," in turn,

> *includes, but is not limited to:*
>
> (i) *Any physiological disorder, or condition*, cosmetic disfigurement, or anatomical loss affecting one or more of [an enumerated list of] body systems . . . ; or
>
> (ii) Any mental, developmental, traumatic, or psychological disorder, including but not limited to cognitive limitation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

*Id.* § 49.60.040(7)(c) (emphasis added).

Taylor does not argue that his obesity arises from an underlying *physiological* disorder or condition. He contends, however, that obesity constitutes an "impairment" because it is a "condition," and the word "physiological" modifies only "disorder" within the text of the WLAD. He notes as well that the WLAD "includes" but does not "limit" its definition of impairment to the disorders and conditions enumerated in § 49.60.040(7)(c). BNSF argues the word "physiological" modifies both "disorder" and "condition,"

and, consequently, that Taylor's perceived obesity does not qualify as an impairment.[1]

## B. The ADA

The Washington Supreme Court also may wish to consider the treatment of obesity under the ADA. As noted, Washington courts treat federal interpretations of the ADA as instructive, but not binding, in interpreting the WLAD. *See Kumar*, 325 P.3d at 197–98; *Davis v. Microsoft Corp.*, 70 P.3d 126, 132 (Wash. 2003). Here, the parties disagree over whether federal cases deciding the obesity issue under the ADA are correctly decided; to what extent those cases remain good law after Congress amended the ADA in 2008; and, even if coverage of obesity under the ADA is limited, whether distinctions in the text and history of the WLAD show that it protects a broader range of impairments than its federal counterpart.

### 1. The Text of the ADA and its Governing Regulations

The ADA defines "disability" as a "physical or mental impairment," 42 U.S.C. § 12102(1)(A), and a regulation issued by the Equal Employment Opportunity Commission (EEOC) defines "impairment" as

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as [an enumerated list]; or

---

[1] Because Taylor does not contend his perceived obesity has a physiological cause, we need not address that question.

> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

This definition is similar to the WLAD definition but is narrower in two potentially significant respects. First, unlike the WLAD, the ADA regulation does not include a comma after "disorder" and before "or condition." Thus, from a purely textual standpoint, the ADA regulation may apply only to "physiological" conditions, whereas WLAD appears to apply to conditions irrespective of physiological cause. The ADA, however, included that comma before 2009, and that pre-2009 definition served as the model for the WLAD definition. The EEOC eliminated the comma in 2009, after Congress liberalized the ADA.

Second, whereas the ADA regulation's definition of impairment appears to be exhaustive, the WLAD makes clear that its definition of impairment is *not* exhaustive. It states explicitly that Washington's definition of impairment "includes, *but is not limited to*," the disorders and conditions enumerated in § 49.60.040(7)(c).

### 2. EEOC Interpretations of § 1630.2(h)

The Washington Supreme Court may wish to consider the EEOC's interpretation of this regulation through interpretative guidance it has issued. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017) (explaining that, under *Auer v. Robbins*, 519 U.S. 452, 461–62 (1997), we "defer to an agency's interpretation of its own ambiguous regulations,

which controls unless 'plainly erroneous or inconsistent with the regulation,' or where there are grounds to believe that the interpretation 'does not reflect the agency's fair and considered judgment of the matter in question'" (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012))). The court may also wish to consider the amicus brief the EEOC has filed in this appeal, which argues that the district court misinterpreted its guidance relative to obesity. *See Balvage v. Ryderwood Improvement & Serv. Ass'n*, 642 F.3d 765, 776 (9th Cir. 2011) ("[A]n agency's litigation position in an amicus brief is entitled to deference if there is no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter." (quoting *Barrientos v. 1801–1825 Morton LLC*, 583 F.3d 1197, 1214 (9th Cir. 2009))).

The EEOC has concluded that obesity constitutes an impairment under the ADA under some but not all circumstances. According to the EEOC's interpretive guidance:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include *physical characteristics such as* eye color, hair color, left-handedness, or height, *weight*, or muscle tone *that are within "normal" range and are not the result of a physiological disorder*. The definition, likewise, does not include characteristic predisposition to illness or disease. Other conditions, such as pregnancy, that are not the result of a

physiological disorder are also not impairments.

[. . .]

The definition of an impairment also does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder.

29 C.F.R. pt. 1630, app., § 1630.2(h) (emphasis added).

In construing this guidance as amicus curiae in support of Taylor's position, the EEOC takes the position that weight (1) is not an impairment when it is within the "normal" range and lacks a physiological cause but (2) may be an impairment when it is either outside the "normal" range or occurs as the result of a physiological disorder. EEOC Br. at 5–6. The EEOC has not defined "normal" range.

The EEOC's position is consistent with a compliance manual it withdrew in 2012. In that manual, the EEOC took the position that "normal deviations in height, weight, or strength that are not the result of a physiological disorder are not impairments. . . . At extremes, however, such deviations may constitute impairments." EEOC Compliance Manual § 902.2(c)(5) (2012).

### 3. Decisions of Other Circuits Construing the ADA

Although this court has not yet addressed the issue, three other federal circuits have considered when obesity qualifies as a disability under the ADA.

The Sixth Circuit has concluded that obesity is an impairment under the ADA only if it has an underlying physiological cause.  In *Andrews v. Ohio*, 104 F.3d 803 (6th Cir. 1997), that court interpreted the EEOC's guidance – erroneously, according to Taylor – to mean that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability." 104 F.3d at 808.   *Andrews* distinguished the "simple obesity" of the state troopers in the case from the "severe obesity" at issue in an earlier case, *Cook v. Rhode Island Department of Mental Health, Retardation & Hospitals*, 10 F.3d 17, 25 (1st Cir. 1993), which had affirmed a jury verdict in favor of a plaintiff who presented expert evidence that severe obesity "is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems."  10 F.3d at 23.  In *Andrews*, by contrast, the state troopers alleged only that they had exceeded a weight limit that bore little relation to their job requirements.  *See* 104 F.3d at 809–10.  The court considered weight a "physical characteristic" which, without more, did not "equal a physiological disorder" entitled to protection.  *Id.*

Like *Andrews*, the Sixth Circuit's later decision in *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 442–43 (6th Cir. 2006), rejected the argument that weight far outside the "normal" range could constitute a physical impairment in the absence of an underlying physiological disorder or condition.

In *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997), the Second Circuit held that "obesity, except in

special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the [ADA]." *Francis* noted that "a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese, or suffers from a weight condition that is the symptom of a physiological disorder." 129 F.3d at 286 (emphasis added) (citations omitted) (citing *Cook*, 10 F.3d at 25). In no case, however, could an employee prevail "against an employer who simply disciplines [him or her] for not meeting certain weight guidelines." *Id.*

After these circuit decisions, Congress passed the ADA Amendments Act, which broadened the definition of a "disability" by relieving plaintiffs of the requirement to show an impairment "substantially limit[s]" a major life activity. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). In rejecting federal courts' narrower interpretations, Congress explained "the definition of disability . . . shall be construed in favor of broad coverage . . . to the maximum extent permitted" under the ADA, adding that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 122 Stat. at 3553–54; *see* 29 C.F.R. § 1630.1(c)(4).

Nevertheless, in *Morriss v. BNSF Railway Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016), the Eighth Circuit concluded that the most "natural reading of the [EEOC's] interpretive guidance is that an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* it occurs as the result of a physiological disorder."

## C. The Montana Supreme Court's Construction of Montana Law

In *BNSF Railway Co. v. Feit*, 281 P.3d 225 (Mont. 2012), the Montana Supreme Court interpreted the meaning of "impairment" under the Montana Human Rights Act, which defines "disability" as a "physical or mental impairment that substantially limits one or more of a person's major life activities." *See id.* at 228 (citing Mont. Code Ann. § 49-2-101(19)(a)). In the absence of state authority on the meaning of "impairment," *Feit* followed the EEOC's interpretive guidance to hold that "[o]besity that is not the symptom of a physiological disorder or condition" may constitute an impairment "if the individual's weight is outside 'normal range' and affects 'one or more body systems.'" *Id.* at 231.

## D. Washington's Broad Interpretation of the WLAD

Regardless of the scope of ADA protection for individuals suffering from obesity, which presents an open question of federal law in this circuit, Washington's legislature and courts have made clear that protections under the WLAD may exceed those under federal law. The Washington Supreme Court has stated that "the [WLAD] affords to state residents protections that are wholly independent of those afforded by the federal [ADA], and . . . the law against discrimination has provided such protections for many years prior to passage of the federal act." *Hale v. Wellpinit Sch. Dist. No. 49*, 198 P.3d 1021, 1024 (Wash. 2009); *see also, e.g.*, *Kumar*, 325 P.3d at 197–98 (explaining why the WLAD is construed broadly); *Martini v. Boeing Co.*, 971 P.2d 45, 53–55 (Wash. 1999) (departing from Title VII's restriction on back pay where its language differed from the WLAD). Thus, even if the ADA's coverage of obesity is narrow, Washington's coverage may be broader.

Taylor, for example, argues the WLAD is broad not merely in its general approach to disability, but also, more specifically, in its interpretation of "impairment." He cites *Clipse v. Commercial Driver Services, Inc.*, 358 P.3d 464 (Wash. Ct. App. 2015), in which the Washington Court of Appeals affirmed a jury verdict in favor of a plaintiff whose employer discriminated against him based on the real and perceived side effects of prescription methadone. *See id.* at 473. "Apply[ing] [the] plain language [of the WLAD]," the court held, for the first time in Washington, that "the side effects of a prescription drug may constitute a disability" because "any mental or physical condition may be a disability." *Id.*

Taylor points out that *Clipse* did not inquire into the physiological causes of methadone-related impairments; it simply applied the "plain language of the statute" and "construe[d] the statute liberally to effectuate its purpose of remedying disability discrimination." *Id.* Citing *Clipse*, he contends that "any mental or physical condition," irrespective of its physiological underpinnings, may constitute an impairment under Washington law.

### III. Certified Question

We certify to the Washington Supreme Court the following question of state law:

> Under what circumstances, if any, does obesity qualify as an "impairment" under the Washington Law against Discrimination (WLAD), Wash. Rev. Code § 49.60.040?

We certify this question pursuant to Revised Code of Washington § 2.60.020. The answer to this question will determine the outcome of the appeal currently pending in this court. We will accept and follow the decision of the Washington Supreme Court on this question, and our phrasing of the question should not restrict the Washington Supreme Court's consideration of the issue.

## IV.

Proceedings in this appeal shall be held in abeyance pending further order of the Court, and the Clerk shall administratively close this docket until the abeyance is lifted. This case is withdrawn from submission.

The Clerk of Court is hereby ordered to transmit to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record in this matter, pursuant to Revised Code of Washington §§ 2.60.010(4) and 2.60.030(2) and Washington Rule of Appellate Procedure 16.16(d).

The parties will notify the Clerk of this court within seven days after the Washington Supreme Court accepts or declines certification, and again within seven days if that court accepts certification and renders an opinion.

If the Washington Supreme Court accepts certification, we designate Plaintiffs-Appellants Casey Taylor and Angelina Taylor to file the first brief in accordance with Washington Rule of Appellate Procedure 16.16(e)(1).

This panel retains jurisdiction over further proceedings in this court.

**SO ORDERED.**