# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GENE and MARALEE BOUMA, husband and wife, | No. 80853-2-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SILVERADO COMMUNITY ASSOCIATION, a Washington nonprofit corporation, | |
| Respondent. | |

APPELWICK, J. — The Boumas appeal from summary judgment and an order awarding attorney fees to the Association. The Boumas contend the trial court erred in declining to grant their motion for summary judgment, granting the Association's motion for summary judgment, and granting the Association's motion for attorney fees. We affirm.

## FACTS

Gene and Maralee Bouma own Gene Bouma Development, Inc. In the early 2000s, Bouma Development developed rural property in Whatcom County into two eight lot residential subdivisions, Silverado East and Silverado West. The Boumas sold off lots 1-7 on each property, which are each about one acre in size. They retained ownership of lot 8 in Silverado East and lot 8 in Silverado West. At 32 and 33 acres, the two lots are much larger and more rural than the lots the Boumas sold off.

In 2000 and 2001, as part of the initial development of the two subdivisions, Bouma Development recorded covenants, conditions, and restrictions (CC&Rs) for each subdivision. The Silverado West CC&Rs included restrictive covenants recorded on November 28, 2000 that created the Silverado Community Association (Association) and gave it certain authorities, such as maintaining common areas. The CC&Rs governing both subdivisions created identical procedures for amendment, providing that they "may be amended in whole or in part signed by not less than Sixty percent (60%) of the owners of the lots affected by [the CC&Rs]." Acting as declarant, Bouma Development adopted and recorded several amendments to the original CC&Rs in 2007 and 2008.

On May 22, 2015, the other members of the Association recorded a new set of comprehensive CC&Rs entitled "Amended and Fully Restated Declaration of Covenants Conditions, and Restrictions of the Subdivisions of Silverado West and Silverado East" (2015 CC&Rs). The Boumas did not agree to the new CC&Rs, however, they were signed by all other owners in the subdivisions.

On January 19, 2017, the Boumas filed a complaint against the Association. They asserted that the 2015 CC&Rs violated chapter 64.38 RCW, exceeded the authority granted in the original covenants, and clouded their title to lot 8 Silverado East and lot 8 Silverado West. They requested quiet title for both lots 8 and declaratory relief that the 2015 CC&Rs were void and unenforceable.

The Boumas then filed a motion for summary judgment on April 10, 2018, seeking to have the 2015 CC&Rs declared void in whole or in part.

On July 12, 2018, the trial court denied the Boumas' motion. The court held that the Association had the authority to adopt the 2015 CC&Rs and found the Boumas' claims regarding specific provisions to be unpersuasive and unsupported.

On January 10, 2019, the Association moved for summary judgment. On November 13, 2019, the trial court entered an order granting the motion and dismissing the Boumas' claims with prejudice. On December 9, 2019, the Association filed a motion for attorney fees and costs. The trial court granted the motion, holding the Boumas were liable under RCW 68.38.050 and the 2015 CC&Rs.

The Boumas appeal.

DISCUSSION

I. Competing Motions for Summary Judgment

This court reviews summary judgment rulings de novo, construing all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. Blue Diamond Grp., Inc. v. KB Seattle 1, Inc., 163 Wn. App. 449, 453, 266 P.3d 881 (2011). A trial court must grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party has the initial burden to show the absence of genuine issues of material fact. Blue Diamond, 163 Wn. App. at 453.

This dispute involves two competing motions for summary judgment. The Boumas moved for summary judgment determining the 2015 CC&Rs were invalid.

The trial court denied their motion.[1]  The Association then moved for summary judgment determining the CC&R amendments were valid, and the trial court issued an order granting their motion.[2]  By virtue of filing their motions seeking summary judgment each party asserted there were no disputes over material facts.  Thus, our consideration of the two motions involves a single analysis limited to questions of law as to the adoption and meaning of the amendments.

The Boumas argue the trial court erred on several grounds in denying their motion for summary judgment.  They further argue the court erred in granting the Association's motion for summary judgment.  These arguments are without merit.

A.  Adoption of the 2015 CC&R Amendments

The CC&Rs governing both subdivisions created identical procedures for amendment, providing that they "may be amended in whole or in part signed by not less than Sixty percent (60%) of the owners of the lots affected by [the CC&Rs]."[3]  The Association properly followed the amendment process.  The 2015

---

[1] The Boumas contend the trial court erred in denying summary judgment on specific provisions that they argued were unreasonable, because the Association did not submit specific facts in rebuttal.  But, the motion posed legal rather than factual questions.

[2] The Boumas argue it is improper to rely on the order denying the Boumas' motion in ruling on the Association's motion.  Though the summary judgment motions were filed at separate times, the Boumas' response to the Association's motion for summary judgment listed the evidence they relied upon as "this brief, their brief in support of their earlier motion for summary judgment, the declaration of Gene Bouma, the second declaration of Gene Bouma, and all other pleadings and papers filed in this matter."  The response brief mirrored their arguments in support of their earlier motion, and all other evidence had been previously available.  There were no questions of material fact.

[3] The Boumas and their company, Bouma Development, drafted the original CC&Rs and were involved in the previous amendments to the CC&Rs.  The language that we are interpreting to determine whether the amendments are proper is language that was originally drafted and prepared by the Boumas.

CC&Rs were signed by every owner in Silverado East and Silverado West aside from the Boumas, far surpassing the necessary 60% threshold.

The Boumas argue even if the Association was authorized to amend the restrictive covenants, it was not authorized to adopt new restrictions. The trial court considered the language of the existing CC&Rs, including section 5.2 that provides "any amended or supplemental declaration shall be enforceable," as evidencing the intent to allow new restrictions.[4] We agree.

Nonetheless, the Boumas contend the amendments were ineffective because their signatures were required. Absent their signatures, they argue the statue of frauds was violated. Under the statute of frauds for real estate, RCW 64.04.010, "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by

---

[4] In addition the trial court relied on section 3.3:

The Court concludes that the covenants authorize the Association to adopt new restrictions. First, under paragraph 3.3, the covenants expressly provide for new restrictions, although in a technically infeasible way.

> The Association may adopt bylaws and rules and regulations as it deems necessary or advisable for transaction of business. Such bylaws and rules and regulations are incorporated by reference as if fully set forth herein and each lot owner shall be required to abide by the rules and regulations.

(Restrictive Covenants ¶ 3.3) ([emphasis] added). The [emphasized] language attempts to merge restrictive covenants with bylaws and rules and regulations, which is problematic. But significant here is that the Developer intended the Association to adopt new bylaws and rules that would then have the force of restrictive covenants. This is clear evidence that the Developer intended the Association to adopt new restrictions as the residential development evolved.

5

deed." Every deed "shall be in writing, signed by the party bound thereby, and acknowledged." RCW 64.04.020. The Boumas rely on Bakke v. Columbia Valley Lumber Company, 49 Wn.2d 165, 169, 298 P.2d 849 (1956), for the assertion that their signatures had to be on the CC&Rs. But, that case concerned an easement, that was held to have been properly voided by the respondent wife, who had not signed the instrument. Id. at 170-71. The other cases relied upon by the Boumas to argue that the 2015 CC&Rs are invalid for failure to satisfy the statute of frauds are similarly inapplicable. They do not cite to any caselaw involving CC&Rs amended by a homeowners' association following an expressly provided amendment process. This argument is without merit.

We affirm the trial court's conclusion that the Association had the authority to adopt the 2015 CC&Rs and that the amendment process was properly followed.

B. Specific Provisions

Amendments to restrictive covenants in Washington are subject to an additional requirement, even where power is exercised consistently and reasonably, whether the restriction is new or merely modified. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 256, 327 P.3d 614 (2014). The Supreme Court has held that "when the general plan of development permits a majority to change the covenants but not create new ones, a simple majority cannot add new restrictive covenants that are inconsistent with the general plan of development or have no relation to existing covenants." Id. And, this court held in Shafer v. Board of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wn. App. 267, 273-74, 883 P.2d 1387 (1994), that "an express reservation of power authorizing less than

6

100 percent of property owners within a subdivision to adopt new restrictions respecting the use of privately owned property is valid, provided that such power is exercised in a reasonable manner consistent with the general plan of the development."

The interpretation of language contained in a restrictive covenant is a question of law. Green v. Normandy Park Riviera Section Cmty. Club, Inc., 137 Wn. App. 665, 681, 151 P.3d 1038 (2007). Restrictive covenants are interpreted to give effect to the intention of the parties to the agreement incorporating the covenants and to carry out the purpose for which they were created. Id. at 683.

The Boumas assert that the amendments are not consistent with the general development plan and impose unreasonable disparate impacts on their property. The trial court addressed their challenges to individual sections of the amendments in its order denying summary judgment. It reasoned as follows:

> The Boumas next contend that various specific provisions are unreasonable and conflict with the general plan of development. The Court finds these arguments unpersuasive as a matter of law.
>
> 1. Listing [Bouma Development] as Grantor
>
> The Boumas argue that the 2015 covenants incorrectly list Gene Bouma Development, Inc. as a Grantor and Grantee for the recorded covenants, invalidating them. This is a scrivener's error and does not invalidate the covenants. Because the Boumas own their lots subject to covenants their company recorded, and the Association properly adopted amendments to these covenants, their property remains bound. The legal description of the property, not the name of the owner in the recording summary, determines the covenant's binding effect.

### 2. References To The Common and Recreation Easement Areas

The Boumas assert that the Association attempted to turn an easement into fee ownership in the 2015 covenants. This is an unreasonable reading of one paragraph in the covenants and ignores references to the easement elsewhere. In paragraph 1.4.2, the 2015 covenants identify the "common areas" within Lot 8 of the Silverado East Plat and Lot 8 of the Silverado West Plat. The Boumas claim that the Association is trying to assert full ownership of the areas, rather than the easement that currently exists. According to the Boumas, "the easement areas are not 'common areas' or 'common properties' owned by the Association." (Plaintiffs' Motion for Summary Judgment at 6). In its Response and at oral argument, counsel for the Association confirmed that the Association does claim ownership of the property or anything other than the recorded easements.

In the Plats for the Silverado East and West, the Developer conveyed over both Lots 8 "common and recreational easement area for the drainage, wells, and utilities purposes for both the Silverado West Plat and Silverado East Plat." These are not simply utility easements but rather are both common and recreational areas for the developments. If the purpose of the easements is ambiguous, any uncertainty comes from the original plats, not the 2015 covenants. The easement areas are listed as common areas, which the Association may use and must maintain.

Elsewhere in the 2015 covenants, the Association makes clear that it owns and maintains easements on Lot 8. (2015 Restrictive Covenants ¶ 2.5) ("use the Lot 8 Common Areas as a common and recreational easement area"). This description duplicates that on the Plats. The court therefore finds no grounds to invalidate the references to the "common and recreational easement area" as a common area.

### 3. Paragraph 2.1, Reservation of Easements

The Boumas claim that paragraph 2.1 of the 2015 covenants "attempts to broadly combine all easements together for all purposes and broaden their scope overall." (Plaintiffs' Summary Judgment Motion at 7). In paragraph 2.1 the 2015 covenants identify the existence of easements "on the face of the Plat" and do not attempt to create or convey additional or expanded easements. The Court finds no grounds to invalidate this paragraph.

### 4. Paragraph 2.3, Drainage Easement

The Boumas allege that Paragraph 2.3 creates drainage easements over any portion of any lot, outside the current areas set aside for the stormwater system and drainage. The Court agrees that the first sentence of paragraph 2.3 is broad in the abstract, but that any dispute over its meaning is hypothetical. The Boumas provide no evidence that the Association has attempted to create a drainage area or easement outside the current system, and without an actual justiciable dispute, the Court will not presume an invalid use of the covenant.

### 5. Paragraph 2.5, Lot 8 Common Areas

The Boumas argue that paragraph 2.5 of the 2015 covenants improperly expands the easements over Lots 8 to include "signage, lighting, and electrical purposes." In the original covenants, the Association has responsibility to maintain and repair street lights and decorative lights located within common areas, and in each of the shared well agreements, the Association has authority to make emergency repairs to the water systems on Lots 8, including the pump houses. Furthermore, in sections 6 and 7 of the 2015 covenants, the Association has responsibility to repair and maintain the water systems serving the various lots.

Maintenance implies both access and the ability to install necessary lights, signs and electrical systems. Like any grant of easement, however, the scope of the rights depend on the purpose of the easement. Since the Boumas provide no evidence that the Association has installed lights, signs or electrical systems unrelated to its maintenance obligations, the Court will not speculate on whether the Association has acted outside the scope of the easement grants.

### 6. Paragraph 3.2, Recreational Vehicles

The Boumas complain that the 2015 covenants restrict the ability of an owner to live in an RV [(recreational vehicle)] on a lot, "if it complied with the county codes." (Plaintiffs' Summary Judgment Motion at 12). Under paragraph 3.2 owners may keep RVs on their property as long as they are reasonably screened from view. The covenants limit out-of-county guests to a 6-week stay in an RV parked at an owners' home. Because Silverado is a residential development, not an RV park, the Court fails to see how the restrictions on permanent RV living violates the general plan of development. There are no grounds to find it invalid.

9

7. Paragraph 3.4, Animals

The Boumas assert that Paragraph 3.4 of the 2015 covenants contain more extensive restrictions on animals that the original covenants. The original covenants banned keeping any livestock or poultry, but the Association later amended the covenants to allow the Boumas on Lot 8 "for personal use, hobby and activity raise and keep farm animals". (2008 Amendment to ¶2.6). The 2015 covenants do not include this amendment, which is within the authority of the Association to approve or deny. If the Boumas want to keep farm animals on Lot 8, they should persuade their fellow owners to approve an amendment, as they did before. The Court finds no grounds to invalidate this covenant.

8. Paragraphs 3.9 & 3.10, Fencing

The Boumas complain that the 2015 covenants impose restrictions that "are much more onerous and limit a lot of owner's ability to use and fence their property how they choose." (Plaintiffs' Summary Judgment Motion at 13). The original covenants required Architectural Control Committee approval for any proposed fencing and limited an owner's right to install fences of any height or composition. The 2015 covenants further refine these limits. This is no reason to invalidate the covenant.

9. Paragraphs 3.12, 3.14, 3.15, 3.18, and 3.23

The Boumas raise general objections to use restrictions in section 3, arguing that [they] restrict the owners' freedom to use their property how they choose. (Plaintiff's Summary Judgment Motion at 14). Yet that is the effect of a restrictive covenant. The Developer obtained plat approval for Silverado East and West—and sold the lots—based on this being a planned residential development, protected by a homeowners' association. The fact that the Association now imposes restrictions that the Boumas do not like does not invalidate the plan of development or the Association's authority. Like any owner in Silverado, the Boumas have the right and responsibility to participate in the Association by amending the covenants or assuring they are enforced fairly. The Court finds no grounds to invalidate these covenant sections.

10. Paragraphs 4.2.1, 4.2.3, and 4.5

The Boumas Object to restrictions on garages, outbuildings, and landscaping, arguing they are more detailed and restrictive. They also contend that even though a 2008 amendment placed restrictions on Lot 8 east, the 2015 covenants cannot place similar

restrictions on Lot 8 west. None of these arguments are persuasive or invalidate the respective covenants.

11. Section 5, Architectural Control Committee

The Boumas complain that the 2015 covenants change the composition of the Architectural Control Committee [(ACC)] and expand its powers. Other than asserting that this is a fundamental change in the scheme of development, they do not prove how these changes are unreasonable or specify how they contradict the general plan of development. The purpose of an ACC is to assure that all construction contributes to, rather than detracts from, the harmony of the residential neighborhood. The Court finds no grounds to invalidate these amendments.

12. Consolidating Maintenance [o]f [t]he Water Systems

The Boumas take issue with the owners' desire to have the Association, rather than each lot owner, maintain the various shared wells serving the development. Much like individual owners hiring a company to service and maintain the wells, the owners can reasonably have the Association take responsibility for the system maintenance and assess themselves to pay for it. The Court finds these provisions reasonably adopted and consistent with the general plan of development. There are no grounds to invalidate them.

13. Paragraph 6.3, Building on the Lot 8 Easement Areas

The Boumas object to the 2015 covenant provision that prohibits construction of any single family residence on the Lot 8 common areas. In 2008, the Association amended paragraph 2.2 to prohibit building and "outbuilding on lot 8 . . . north of deer creek OR within 200 feet to the south of Deer Creek." (2008 Amendment at 2). The Boumas did not object to this restriction and in fact recorded the amendment for the Association. Here the Boumas argue that the Association cannot unilaterally place such a restriction on the Bouma Lots. Because current easements over the Lot 8 common and recreational easement area most likely foreclose constructing any structures on the area, the Court declines to rule on this provision. Any dispute remains hypothetical.

14. Section 7, Association Powers

Finally, the Boumas object to the expanded powers of the Association, worrying that it would "allow the Association to come onto any lot, anywhere, and do almost anything." (Plaintiffs' Summary Judgment Motion at 19). The Court disagrees. The

provisions in Section 7 are standard for homeowners' associations under RCW 64.38.020, and permit the Association to fund its obligations under the covenants. In paragraph 3.2 of the original covenants, the Declarant provided "no diminution or abatement of <u>assessments</u> shall be claimed or allotted by reason of any alleged failure of the association to take some action or perform some function required to be taken or performed by the Association under this Declaration." (Restrictive Covenants ¶ 3.2) (emphasis added). The ability to assess its members was implied.

The Court finds no grounds to invalidate these covenant provisions.

(Last alteration in original.)

We share the view of the trial court, that the Boumas failed to show as a matter of law that any portion of the amendments were inconsistent with the general development plan, imposed unreasonable disparate impacts on their property, or were otherwise invalid.

We affirm the denial of summary judgment to the Boumas and the grant of summary judgment to the Association.

II.   Attorney Fees and Costs

Finally, the Boumas argue the trial court awarded attorney fees and costs to the Association in error. They argue the Association filed an untimely motion, did not file a motion to enlarge time, it did not do so due to excusable neglect, and that there were no claims subject to the attorney fees provision in the 2015 CC&Rs.

The issue of whether a party is entitled to fees is a question of law we review de novo. O'Neill v. City of Shoreline, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014). The amount of an award of reasonable attorney fees is a matter within the trial court's discretion. Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 65, 738 P.2d 665 (1987). A trial court abuses its discretion only when its decision is manifestly

unreasonable, or when its discretion is exercised on untenable grounds or for untenable reasons. TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 214, 165 P.3d 1271, (2007).

CR 54(d)(2) states,

Claims for attorneys' fees and expenses, other than costs and disbursements, shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial. Unless otherwise provided by statute or order of the court, the motion must be filed no later than 10 days after entry of judgment.

CR 6(b) provides procedures for enlarging the time specified in this rule. Where the motion is made after the expiration of the temporal limitation, the court may "permit the act to be done where the failure to act was the result of excusable neglect." CR 6(b)(2).

On November 13, 2019, the court filed the order granting summary judgment in favor of the Association. By this time, counsel of record for the Association had changed jobs. New counsel learned of the November 13, 2019 order on November 20, 7 days after it was filed. The Association offered a declaration to this effect in support of its motion for attorney fees and costs. The Association filed its motion for attorney fees on December 9, 2019, 26 days after the summary judgment order.

The parties dispute whether the Association, as the prevailing party, had to file a motion for an award of attorney fees within 10 days in compliance with CR 54(d). Our Supreme Court recently held that a summary judgment order resolving all substantive legal claims constitutes a "final judgment" pursuant to RAP

13

2.2(a)(1). <u>Denney v. City of Richland</u>, 195 Wn.2d 649, 651, 462 P.3d 842 (2020). Further, the <u>Denney</u> court reasoned that Washington courts have held a summary judgment order to be a final judgment despite later entry of a money judgment in previous cases. <u>Id.</u> at 656. It reasoned, an order granting summary judgment "falls within this court's definition of final judgment." <u>Id.</u> at 657. We hold the order granting summary judgment to the Association was a final judgment for the purposes of CR 54(d)(2).

A court may enlarge deadlines after they have passed only if the party's lateness was the result of excusable neglect. <u>Clipse v. Commercial Driver Servs., Inc.</u>, 189 Wn. App. 776, 787, 358 P.3d 464 (2015). The Boumas argue the "excusable neglect" exception is unavailable, because the Association never filed a motion to enlarge time under CrR 6(b). However, in <u>Corey v. Pierce County</u>, 154 Wn. App. 752, 774, 225 P.3d 367 (2010), this court held that a party's claim was barred by the 10 day filing limitation in CR 54(d) where she had not shown "excusable neglect or reason for delay" in filing for attorney fees, contemplating the standard absent a CR 6(b) motion. An attorney quitting because he changed jobs is outside of the Association's control. The Association provided declarations to this effect demonstrating the reason for the delay. We hold the trial court's decision to rule on the motion despite the delay was reasonable in light of showing of excusable neglect by the Association.

The Association was awarded fees under RCW 64.38.050 and the 2015 CC&Rs. The Boumas argue this is not an enforcement case, and therefore relief

14

under the CC&Rs is inappropriate.[5]  The Boumas rely on Meresse v. Stelma, 100 Wn. App. 857, 999 P.2d 1267 (2000), to support their argument against a fee award.  The Meresses, the original plaintiffs, alleged the subdivision owners had adopted amendments to the restrictive covenants that were invalid.  Id. at 868-69.  They sought attorney fees against their homeowners' association.  Id.  They were not entitled to fees where the homeowners' association exceeded its authority, but were not in violation of the instrument.  Id. at 869.  Nor was the homeowners' association entitled to attorney fees where it was rightly challenged for exceeding its authority.  Id. at 868-69.  Meresse is distinguishable.  The applicable attorney fee provision was narrower in Meresse.

The 2015 CC&Rs provide, "the prevailing party in any litigation involving the enforcement of any provision of this [2015 CC&R] shall be entitled to judgment and any remedy in law or equity . . . and for the reasonable attorneys' fees and costs incurred in such litigation but such prevailing party."  The Boumas argue that this is not an enforcement case, and therefore the court is unable to award attorney fees under this provision.  But, the CC&Rs also say, "The provisions contained in [the CC&Rs] or any amended or supplemental declaration shall be enforceable by proceeding for prohibitive or mandatory injunction."  Bouma's complaint sought declaratory relief.  It sought enforcement of the preamendment CC&Rs.  The trial

---

[5] The Boumas raise the issue of lack of claims subject to the provisions in the 2015 CC&Rs for the first time on appeal, which they acknowledge.  This court may refuse to review any claim of error which was not raised in the trial court.  RAP 2.5(A).  However, we may nonetheless address the issue if we so choose.  Smith v. Shannon, 100 Wn.2d 26, 38, 666 P.2d 351 (1983).

court did not err in concluding that the CC&Rs provide an appropriate basis to award fees.

Chapter 64.38 RCW relates to homeowners' associations. The Boumas' motion for summary judgment sought a ruling, as a matter of law, that the 2015 CC&Rs were invalid and unenforceable, brought pursuant to chapter 64.38 RCW. RCW 64.38.050 provides that "any violation of the provisions of this chapter entitles an aggrieved party to any remedy provided by law or in equity. The court, in an appropriate case, may award reasonable attorneys' fees to the prevailing party." Neither the Association nor the trial court identified a violation of the chapter by the Boumas in bringing their challenge to the amendments. An award of fees under the statute was error, but has no consequence given the award was also under the 2015 CC&Rs.

The Boumas further argue the trial court record does not support the attorney fees. The court held the Boumas were liable under the 2015 CC&Rs and RCW 64.38.050 in the amount of $32,434.50. The Boumas did not object to the hourly rate provided by the Association. The Boumas requested that the fees should "should be reduced by $1,066.00 for time spent on an unsuccessful motion to compel and $6,585.00 for time for [Brad] Swanson that it has failed to prove is reasonable." They argued it was not clear that Swanson's time was spent on work related to the lawsuit. The court awarded the amount requested by the Association. The Boumas do not demonstrate any abuse of discretion by the trial court regarding the amount awarded.

The trial court did not err in the award of attorney fees.

III.     Attorney Fees on Appeal

As the prevailing party on appeal, the Association is entitled to an award of attorney fees and costs pursuant to the CC&Rs.  The Association's request for attorney fees and costs on appeal is granted.

We affirm.

_Appelwick, J._

WE CONCUR

_____          _____
                                              Mann, C.J.