# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELLIOT GIBSON,<br><br>                Appellant,<br><br>        v.<br><br>COSTCO WHOLESALE, INC.,<br><br>                Respondent,<br><br>DOES I through V, inclusive,<br><br>                Defendants. | No. 80976-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Gibson challenges the trial court's award of summary judgment to Costco on his disability discrimination claim. He argues Costco failed to engage in an interactive process to determine a reasonable accommodation for his disability before placing him on an unpaid leave. We affirm.

## FACTS

Elliot Gibson has worked at the Costco Optical Lab (Lab) in Auburn since 2008. The Lab is one of two that collectively produce all prescription eyewear for Costco's North American warehouses. It is a large, airplane hangar-like facility that operates around the clock. The production floor contains large machinery, conveyer belts, workers, forklifts, hazardous chemicals, and a dedicated environmental compliance team. The Lab is divided into several departments including Stockroom, Surface, Anti-Reflective Coating, and Finish. For the most

part, these departments are not separated by physical barriers; they exist side-by-side on the production floor.

Gibson began work on the production floor in the Stockroom in 2008. In 2012, he transferred to Finishing. In that position, he worked on the production floor grinding eyeglass lenses into shape to fit the frame.

In December 2013, Gibson presented Costco with documentation from his doctor indicating that he was unable to work around loud noises. His doctor recommended that he be permitted to wear noise cancelling headphones. Costco had some safety concerns with headphones on the production floor. Nevertheless, Costco accommodated Gibson's request. Shortly thereafter, Costco further accommodated Gibson by facilitating a transfer back to the Stockroom, which is generally quieter than Finishing.

On November 3, 2014, Gibson presented Costco with documentation from his doctor that he was "[un]able to be around people [or] loud noises." His doctor indicated he would need to be intermittently absent from work for up to two days per month for the next year. Costco agreed to this request, pursuant to its policy allowing employees to take two "accommodation days" per month even if they are unable to cover those days with sick or Family Medical Leave Act (FMLA) time. 29 U.S.C. §§ 2601-2654.

On November 12, 2014, Gibson's supervisor and another manager had a meeting with him to clarify his restrictions. In that meeting, Gibson acknowledged that there were no jobs where he would not be around people, and that he told that to his doctor. Because of this, Costco placed Gibson on a nine week leave of

absence with instructions to get further clarification on his restrictions. The manager documented the meeting on a transitional duty checklist.

On November 20, 2014, a manager sent Gibson a letter seeking further clarification from his doctor on his inability to work around people. She informed him that, should he have any difficulty obtaining the records, Costco was willing to provide a physician to communicate with his doctor at Costco's expense. She invited him to contact her directly if he had any questions.

On January 8, 2015, Gibson's manager sent him another letter informing him that he had exhausted his FMLA and state law leave and provided dates when he was anticipated to be eligible for further FMLA or state law leave. Despite his exhaustion of leave, his manager indicated that he would still be allowed two excused absences per month due to his documented health condition. He was instructed to indicate absences taken for this purpose were due to his documented medical condition when calling out of work. His manager offered to discuss any further assistance that would help Gibson not miss work, and encouraged him to reach out to her with any questions. Gibson signed this letter indicating that he accepted the offered accommodation.

Thereafter, Gibson submitted further documentation from this doctor dated January 2, 2015. That documentation indicated that Gibson would need intermittent leave for up to seven days per month. Gibson's manager sent another letter on January 8, 2015 indicating that Costco would not be able to excuse more than two days per month. She indicated that Gibson was able to access personal

medical leave (PML): a one year job protected leave provided by Costco in addition to FMLA and Gibson refused to sign that letter.

In November 2015, Gibson submitted further documentation from his doctor indicating that he was able to work only three days per week, four hours per day. It also indicated that he could not push or pull any more than 20 pounds, and could only stand, walk, bend or stoop for up to 3 hours per day. In response, Costco offered a temporary, part-time assignment in the Stockroom that allowed him to work within his restrictions. Gibson declined that accommodation. He later provided additional documentation with further restrictions, including that he was unable to stand or sit continuously for more than 30 minutes.

On November 17, 2015, Costco offered Gibson a temporary assignment at the Auburn Humane Society Thrift Shop under Costco's Interim Community Employment Program (ICEP). Under the program, Gibson would be able to work at the thrift store while receiving his full Costco pay and benefits. While working at the store, his manager checked in with him regarding his physical restrictions and ability to perform job functions. Gibson worked at the store until February 10, 2016. At the conclusion of his ICEP assignment, Costco placed Gibson on leave.

On March 17, 2016, Costco conducted a job assessment meeting (JAM) with Gibson. Costco utilizes JAMs where an employee has medical restrictions on their ability to perform their job functions. They are designed to clarify restrictions, determine whether they can be reasonably accommodated, and assess whether there are open positions that the employee can be reassigned to within their

4

restrictions.  The meetings generally include the employee, manager, and a neutral note taker.

At the JAM, Gibson and Costco determined that he was still unable to meet the essential requirements of his Stockroom job.  The Lab had no other open positions.  Gibson was placed on leave until his restrictions changed or until another position which fit his restrictions became available.  These findings were memorialized in contemporaneous notes, which Gibson signed to indicate his agreement.

On June 1, 2016, Costco offered Gibson a position as a member services assistant, and installed a stand/sit desk for him.  This position is the only position in the Lab that does not require significant physical strain.  The position is nevertheless demanding.  It involves working to resolve problems with incomplete or erroneous eyeglass orders.  Costco has high standards for the prompt resolution of these issues.  Its goal is to have all eyeglass orders processed within 48 hours. The position also involves managing phone traffic to and from the Lab, monitoring building access, and greeting visitors.  Costco expects all phone calls to be answered within three rings.  To accomplish this, all Member Services employees are expected to answer calls.  When someone is unable to answer a call, it will increase the workload for the other employees.  Costco believes that "reliable attendance and cognitive focus and engagement" are essential functions of the job.

On December 28, 2017, Gibson requested another leave to address "auditory hallucinations." At that time, Gibson had accrued 205 hours of FMLA leave. After those hours were exhausted, Costco allowed him to continue leave under its PML policy. He remained on PML leave for 12 weeks.

On March 26, 2018, Gibson was cleared to return to work, but at a reduced schedule of five hours per day, four days per week. Costco held another JAM with Gibson the next day. At that meeting, Costco offered Gibson a Temporary Transitional Duty (TTD) position in Member Services that allowed his reduced schedule. Costco offers TTD when an employee has restrictions that prevent them from performing essential functions of their job. It is essentially a temporary, light-duty assignment that removes one or more essential function of the employee's job. Costco generally limits TTD to 12 weeks. Gibson's TTD in this instance was for a total of 12 weeks. Gibson accepted the offer.

During this TTD, Costco noticed that, in addition to his reduced hours, Gibson was taking a number of additional breaks. Often, he would simply leave his workstation without informing anyone, sometimes for long periods of time, prompting complaints from other employees.

When asked about the breaks, Gibson indicated that he required breaks as an additional medical accommodation. Costco management met with him to discuss the accommodation the following day, April 26, 2018. Costco indicated that Gibson would need to provide medical documentation of his need for this accommodation. Still, Costco allowed the breaks pending Gibson providing the necessary documentation.

Gibson provided medical documentation May 1, 2018. The documentation Gibson provided indicated only that he should "take breaks as needed 5-20 minutes to manage symptoms." Costco wanted more information, including what the anticipated frequency of the breaks would be, whether they could be scheduled, how long the accommodation would be necessary, and whether a different accommodation would suffice. Costco asked Gibson for further clarification on the note, but he was unable to provide any.

On May 5, 2018, Costco management conducted another meeting with Gibson to determine if it could continue to accommodate Gibson's restrictions. At that meeting, it was determined that Gibson would be allowed to continue on transitional duty until May 31, working his reduced schedule and taking breaks as needed to manage his symptoms. Gibson signed a letter indicating his acceptance of the offer. On May 17, the TTD was extended to July 5, 2018.

During this TTD, Costco informally tracked Gibson's breaks. It found the breaks to be unpredictable in frequency and duration. During his 5 hour shift, he would take 2 to 3 breaks, often approaching or exceeding 20 minutes, sometimes 30 minutes. On multiple occasions, the breaks during his shift totaled more than an hour. Gibson often did not tell others that he was leaving his station, despite policy and practice to do so.

On June 20, 2018, Costco management met with Gibson to discuss the upcoming end to his TTD. Management informed him that, when his TTD ended he would need to resume a full-time schedule and provide medical documentation of his ability to do so. Gibson claims that management termed this as a "full

release," which Gibson interpreted to mean able to work a full-time schedule. An internal management e-mail termed it a "full duty release." The sender of that e-mail indicated that the "full duty release" e-mail was a standard message sent to management whenever an employee was nearing the end of a TTD period. Nobody from Costco management told Gibson that he would need an unconditional release in order to return to work.

Costco provided testimony from its designated corporate officer that it has no policy of requiring a full release at the end of TTD. Instead, the practice is to require an employee coming off of TTD to be able to perform all essential job functions.

On June 22, 2018, Gibson presented Costco with a note from his doctor indicating he could "return to work immediately." The note did not indicate any restrictions on Gibson's ability to work. That day, Gibson worked a full eight hour shift but still took periodic unscheduled breaks. When asked if he still required unplanned breaks on a possibly hourly basis, Gibson indicated that he did. Gibson claims that management informed him that if he still required these breaks, he would be unable to return to work, and instead would be offered an unpaid leave of absence. Gibson was then placed on leave.

On June 22 and 23, 2018, Costco management e-mailed Gibson, but received no response. Management also called and left a message, but he did not respond. On July 4, 2018, Gibson sent an e-mail to Costco reminding it that he had questions and asking for further details on why he had been placed on leave. Management responded the next day. Management provided more detailed

8

written responses to his questions on December 18, 2018. On June 29 and July 5, Costco sent Gibson leave paperwork to share with his doctor, but he did not respond.

On July 11, 2018, a representative of Costco's third party accommodations assistance provider, Briotix Health Limited Partnership, called Gibson and offered assistance obtaining medical documentation to move the process along. Gibson declined assistance. Briotix called again on July 17 and left a message. Gibson did not respond.

On July 21, 2018, Gibson provided a work restriction form—dated July 12—which set forth several work restrictions. The form indicated that Gibson still required breaks of 5-15 minutes hourly as needed. The form indicated that this would be required at a minimum until October 31, or until "treatment success." The form also indicated that he was limited in his ability to perform under stress, maintain composure, work with others, and respond to feedback and criticism. Costco determined it could not accommodate this restriction for this amount of time, and placed Gibson on leave until October 31, or until his restrictions changed, whichever came first.

On July 25, 2018, after unsuccessfully trying to reach Gibson multiple times by phone, Costco sent Gibson a letter to notify him of the status of his employment. The letter indicated that Costco was unable to accommodate his restrictions at that time, that his leave was extended to October 31, 2018, and asked him to notify Costco if his restrictions changed.

On July 26, 2018, Gibson filed a complaint against Costco with the Equal Employment Opportunity Commission (EEOC). On October 8, 2018, Gibson commenced this suit in King County Superior Court, alleging that Costco had violated the Washington Law Against Discrimination[1] (WLAD).

On October 25, 2018, Gibson e-mailed Costco in anticipation of the end of his leave of absence. He indicated that he was ready to work full-time with the same break restrictions. Costco replied that if he was ready to return to work, Costco needed a medical release, "with or without restrictions." Gibson replied that Costco should be able to use the same paperwork he had submitted at the start of his leave.

On November 9, 2018, Costco held another JAM meeting with Gibson to discuss further job accommodations. At the meeting, the parties discussed Gibson's continued need for breaks during the workday. Costco indicated that the breaks posed difficulty because there were not enough employees to answer the phones when he was not at his workstation. Costco asked Gibson to go back to his medical providers for further clarification on his needed accommodations.

On December 12, 2018, Gibson submitted an updated medical form on his restrictions. It said,

> Elliott has difficulty handeling [sic] stressful social interactions and evaluations . . . He has been practicing exercises taught to him by psychologist [sic]. He is ready to return to work but will need time to practice using his new mental health tools when stressors arise. He would benefit from being allowed to take a 5-15 minute break every hour. He may not need breaks this often, but knowing this is an

---

[1] Chapter 49.60 RCW.

10

option will decrease his overall stress level helping him be more successful at work.

The parties held another JAM on December 28, 2018. At the meeting, it was determined that Gibson would be allowed to come back to work on a trial basis. During this trial period, Gibson was instructed to notify managers when he took breaks so they could be logged. Management confirmed to Gibson that their willingness to allow him back to work arose from their sense from his new documentation that his condition was improving. Costco indicated their sense that the frequency and duration of Gibson's required breaks had lessened and would continue to do so over time.

On January 2, 2019, Gibson returned to work in the Member Services Department. He still took breaks, but they were of less frequency and duration than they had been prior to his leave.

In April 2019, Gibson submitted medical documentation indicating he may need to return to a part-time schedule and needed to take longer breaks. Costco agreed to a reduced schedule and allowed him to take breaks as needed. Gibson began having attendance issues as well, compiling unexcused absences sufficient to trigger discipline. Costco did not formally discipline Gibson, opting instead to discuss the issue with him informally.

Gibson requested another leave of absence on October 10, 2019. Costco granted this request. Costco claims Gibson is still employed at

11

Costco, and Gibson does not dispute this. It is unclear from the record whether he is on leave or working regularly at this time.

All the while, this lawsuit has continued. On November 15, 2019, the parties each requested summary judgment. The trial court denied Gibson's motion and granted summary judgment for Costco.

Gibson appeals.

DISCUSSION

Gibson argues that Costco failed to adequately engage in an interactive process to accommodate his disability. Specifically, he takes issue with Costco's decision to place him on leave in June 2018. He claims this decision was based on Costco's unlawful policy requiring employees to provide a "full release" at the end of a transitional duty assignment. So, he argues, the trial court erred in granting summary judgment for Costco.[2]

I. Washington Law Against Discrimination

The WLAD makes it unlawful for an employer to discriminate against an employee because of the presence of any sensory, mental, or physical disability. RCW 49.60.180(3). It requires an employer to reasonably accommodate an

---

[2] Gibson's original complaint alleged violations of WLAD and the Washington Family Leave Act (WFLA), former chapter 49.78 RCW, repealed by LAWS OF 2006, ch. 59, § 23, LAWS OF 2017, ch. 5, § 98. Costco moved for summary judgment on both claims. The trial court granted the motion. Gibson assigns error to the trial court's grant of summary judgment but provides no argument regarding his WFLA claim. Appellants are required to provide argument in support of the issues presented for review, including citations to the record. RAP 10.3(a)(6). Failure to provide this argument renders the issue undeserving of appellate consideration. Holland v. City of Tacoma, 90 Wn. App. 533, 537-38, 954 P.2d 290 (1998). We proceed to consider whether the trial court erred in granting summary judgment to Costco on Gibson's WLAD claim.

employee with a disability unless the accommodation would pose an undue hardship. Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 777, 249 P.3d 1044 (2011). Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible interactive process. Id. at 779. The duty to accommodate is continuing. Id. at 781. Employers may wish to test one mode of accommodation, and then test another. See id. "An employer's previously unsuccessful attempts at accommodation do not give rise to liability if the employer ultimately provides a reasonable accommodation." Id.

## II. Standard of Review

We review summary judgment decisions de novo. Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 231, 393 P.2d 776 (2017). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences must be interpreted in the light most favorable to the non-moving party. Sabey v. Howard Johnson & Co., 101 Wn. App. 575, 582, 5 P.3d 730 (2000).

WLAD is to be construed liberally to effectuate its purpose of remedying discrimination. Clipse v. Commercial Driver Servs., Inc., 189 Wn. App. 776, 790, 358 P.3d 464 (2015). Because of this, summary judgment is often inappropriate in WLAD cases. Frisino, 160 Wn. App. at 777. But, summary judgment is still appropriate where the plaintiff fails to raise a genuine issue of material fact on one or more of the prima facie elements of a WLAD claim. Id.

To state a prima facie case for failure to accommodate under WLAD, Gibson must show:

> (1) That he had an impairment that is medically recognizable or diagnosable or exists as a record or history; and
>
> (2) That . . .
>
> > (a) [he] gave [Costco] notice of the impairment . . . ; . . .
> >
> > . . . .
>
> (3) That . . .
>
> > (a) the impairment has . . . a substantially limiting effect on
> >
> > > (i) his . . . ability to perform his . . . job; . . .
> > >
> > > . . . .
>
> (4) That he would have been able to perform the essential functions of the job in question with reasonable accommodation; and
>
> (5) That the employer failed to reasonably accommodate the impairment.

6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.33, at 364-65 (7th ed. 2019).

It is uncontested that Gibson has a disability which Costco knows prevents him from performing the essential functions of his job absent accommodation. The parties contest only elements (4) and (5).

### III. June Leave Determination Did Not Violate WLAD

#### A. No Policy of Automatic Leave

Gibson claims that Costco automatically denied Gibson's request for accommodation at the end of his 12 week TTD period without engaging in any actual discussion with him regarding his job functions, the potential impact of his

14

requested accommodation, and alternative accommodations that could have allowed him to perform his job duties. This claim mischaracterizes the record.

Gibson requested leave in December 2017. He was granted 12 weeks leave.[3] When that leave expired in March 2018, he was medically cleared to work only five hours per day, four days per week. Costco offered and Gibson accepted a TTD which allowed him to work under those medical restrictions for 2 weeks. The TTD was later extended by agreement to May 31 and then again to July 5. This part-time TTD is not a form of required accommodation. See Davis v. Microsoft Corp., 149 Wn.2d 521, 534-36, 70 P.3d 126 (2003) (employer is not required by WLAD to provide a reduced work schedule as an accommodation).

On June 20, 2018, Costco management met with Gibson to discuss the upcoming end to his TTD. Gibson needed medical clearance to return to full-time employment and perform essential job functions. Gibson had not provided medical clearance to that point. He was informed that without it, he would be placed on leave.[4] Whether Gibson was regarded as still being on leave during his TTD or being returned to leave when the TTD expired, it is undisputed that he had not been reinstated and could not be without medical clearance. This was a correct statement of law and fact, not an inappropriate automatic leave policy.

---

[3] At this time, Gibson had roughly 205 hours of FMLA leave available. He exhausted those hours and covered the remainder through Costco's PML policy.
[4] Gibson was ineligible for FMLA or state law leave at this time point in time. His leave was based solely on Costco's internal PML policy.

B. No Policy of Full Release after TTD

Gibson claims that before his 2018 TTD ended, Costco specifically instructed him to provide a full-time work release from his doctor, not a full-duty release. He claims he was nonetheless placed on an unpaid leave solely because the release he provided was for a return to work full-time rather than full-duty. The record does not support this claim.

Gibson could be reinstated to his full-time job answering calls in member services only if medically cleared to perform all the essential functions of the job. Costco never claimed he must do so without accommodation of his disability. As of the June 20 meeting, he had not provided that clearance nor identified the accommodations necessary to return full-time.

Two days later, Gibson produced a doctor's authorization to return to full-time work. No limitation or accommodations were noted. On June 22, Gibson reported to member services to work a normal shift. He took unscheduled breaks throughout the day. He was told this was not acceptable and placed on leave. The record is clear that he had not provided medical documentation of his current accommodation needs, and had not obtained Costco's agreement to such accommodations. Only on July 21 did Gibson produce medical documentation of accommodations needed to return to his job full-time.[5] Costco did not violate the WLAD by not reinstating him without medical clearance nor by placing him on leave as a result. The full-duty claim lacks factual merit.

---

[5] The work restriction form was dated July 12. It indicated that Gibson would require breaks "up to 5-15 min. hourly," and that the accommodation would be needed until "[October 31, 2018] or treatment success."

C. No Failure to Interact on Accommodation

Gibson argues Costco failed to engage in the interactive process before placing him on leave in June 2018. He asserts that unless requested by the employee or to prevent discharge, a forced unpaid leave of several months cannot be considered a reasonable accommodation. To accommodate, the employer must affirmatively take steps to help the disabled employee continue working— either at their existing position or through attempts to find a position compatible with their skills and limitations. Griffith v. Boise Cascade, Inc., 111 Wn. App. 436, 442-43, 45 P.3d 589 (2002).

Costco had been engaging with Gibson since 2013. Costco was engaging in the interactive process on June 20, 2018 when it met with Gibson, and on June 22 when Gibson worked an additional shift. He was placed on leave because he had not responded in that process with the necessary medical information and, as a result, had not achieved agreed upon accommodations. Costco reached out to him repeatedly during June and July and continued reaching out until December when it received revised medical documentation of accommodation needs that it believed allowed Gibson to return to work. The record is also clear that Gibson did not respond to all of Costco's attempts to reach him. The record is clear that the reason Gibson was placed on leave in June and continued on leave for several months was not a failure of Costco to engage in the interactive process.

17

IV. The Accommodation Requested Was Not Reasonable

Gibson argues that, at the time of his leave in June 2018, he was able to perform the essential functions of his job. Costco counters that "reliable attendance" is an essential function, which Gibson was unable to provide. Gibson argues that he did not have attendance issues and that his breaks improved his cognitive focus.

An "essential function" is a job duty that is fundamental, basic, necessary, and indispensable to filling a particular position. Davis, 149 Wn.2d at 533. The ability to work a particular schedule can be an essential function. See id. at 535-36. Employers are not required to eliminate essential job functions to accommodate a disability. Pulcino v. Fed. Express Corp., 141 Wn.2d 629, 643, 9 P.3d 787 (2000), overruled in part on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006). Nor is an employer required to reassign essential job functions to other employees. Id. at 644.

In March 2018, Gibson submitted medical clearance to return from leave for five hours a day, four days a week. That became the basis for his TTD. On May 1, 2018 Gibson submitted medical documentation indicating that he "[t]ake breaks as needed. 5-20 minutes to manage symptoms." Though Gibson provided a medical clearance to return to work full-time on June 22, it did not update any accommodation needs. The medical accommodation information provided to Costco was not updated again until July 21, 2018. It requested 5 to 15 minute breaks per hour, through October 31 or until treatment success.

Gibson's position involved answering phones and greeting visitors to the Lab. These functions require Gibson to be at his workstation. Costco introduced evidence that "reliable attendance and cognitive focus and engagement" are essential functions of Gibson's Member Services position. Gibson explains the purpose of the extra breaks he sought were to afford him time to engage in guided meditation, allowing him to "think more clearly" and "focus better and for longer periods of time"—an outcome clearly related to and important for Gibson's "cognitive focus and engagement" requirement. But, the purpose of the breaks and the need for such breaks is not in question. What is at issue is whether Gibson was performing the essential functions of his job if he was taking these breaks.

Gibson argues that he did not have attendance issues. He equates "attendance" with showing up to his scheduled shift. But, the issue is not whether showed up for work. The issue is whether he was capable of performing essential functions on a full-time basis with the requested accommodation, while he was present for a shift. If he is not, the requested accommodation is not reasonable.

Gibson is unable to perform an essential function while his breaks take him physically away from his workstation. The record is clear that the amount of break time accommodation he has requested was 5 to 20 minutes as needed. Yet, the weeks immediately prior to the June leave, while he was working a 5 hour shift on his TTD, his breaks often approached or exceeded the maximum duration, sometimes being up to 30 minutes long. More than once, his breaks (in total) exceeded 1 hour of his already-reduced 5 hour shift. The amount of time he was on break during the TTD was very significant. If viewed as a requested

19

accommodation, it is equivalent to converting a full-time position to a part-time position. WLAD does not require an employer to make such an accommodation. See Davis, 149 Wn.2d at 535-36. And, in June, Gibson had not provided Costco any medical documentation or even a personal assurance that he would be away from his work station less than he had been demonstrating during his part-time shifts on the TTD.

Gibson argues that his June leave was not about essential functions, because he was allowed to return to work with what he describes as the same breaks accommodation Costco had rejected in June. But, the new breaks restriction differed in ways that were significant to Costco. First, the medical documentation describing this restriction indicated that Gibson had developed new coping techniques. Second, the new medical documentation indicated that the breaks "would benefit" Gibson rather than being "needed." Third, the documentation indicated that the breaks may not even be needed, but that having them available would decrease Gibson's symptoms. Taken together, Costco believed this new documentation showed meaningful improvement that Costco thought could continue if Gibson were allowed to go back to work.

V. Conclusion

The evidence, viewed in the light most favorable to Gibson, fails to raise a genuine issue of material fact as to whether Costco reasonably accommodated him or engaged in an interactive process with him, or whether he would have been able meet the essential functions of his position with reasonable accommodation.

He fails to make a prima facie case under WLAD.  The trial court did not err in granting summary judgment for Costco.

We affirm.

Appelwick, J.

WE CONCUR:

_____    _____
                              Dwyer, J.